979 F.2d 855
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Chand KUMARI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70441.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1992.
Decided Nov. 19, 1992.
 
 Before SNEED, ALARCON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Chand Kumari seeks review of the Board of Immigration Appeals (BIA) final order denying her request for asylum under section 108(a) of the Immigration and Nationality Act (INA), and for withholding of deportation under § 243(h). The Immigration Judge ("IJ") determined that Kumari's testimony did not support her claim for asylum and withholding of deportation because she was not a credible witness. The BIA affirmed the IJ's adverse credibility findings. We hold that the BIA's adverse credibility findings are supported by substantial evidence. We thus deny the petition and affirm the decision of the BIA.
 
 I.
 
 3
 Kumari entered the United States on May 21, 1988, on a nonimmigrant visitor's visa which authorized her to remain in this country for no more than six months. She applied for asylum and withholding of deportation on December 20, 1988. At her request, the State Department's Bureau of Human Rights and Humanitarian Affairs ("Bureau") evaluated her asylum request. The Bureau concluded she had not stated sufficient facts to support her claim of persecution.
 
 
 4
 The District Director of the Immigration And Naturalization Service ("INS") denied her application for political asylum. On April 26, 1989, the INS issued an order to show cause requiring Kumari to demonstrate why she should not be deported. The deportation hearing was conducted on July 27, 1989. Kumari conceded deportability. An IJ found that Kumari was subject to deportation.
 
 
 5
 An asylum hearing was conducted before an IJ on November 3, 1989. Kumari was provided an interpreter at this hearing. She was represented by counsel, and has been since she applied for asylum on December 20, 1988.
 
 
 6
 Kumari testified on her own behalf. She also offered newspaper articles concerning activities and political conditions in Fiji. The IJ found that her testimony concerning her fear of persecution in Fiji lacked credibility due to the inconsistencies between her testimony and the declarations she filed in support of her application for asylum. In addition, the IJ determined that the documentary evidence introduced by Kumari conflicted with her testimony concerning alleged religious persecutions of Hindus by the Fiji government and did not contain facts establishing that her fear of persecution was well-founded. The application for asylum and withholding of deportation was denied. The IJ granted Kumari's application for voluntary departure.
 
 
 7
 On June 3, 1991, the BIA affirmed the IJ's adverse credibility determination and the denial of Kumari's application for asylum and withholding of deportation. The BIA agreed with the IJ that the documentary evidence introduced by Kumari undermined her testimony that she would face persecution in Fiji because she is a Hindu.
 
 II.
 
 8
 Kumari argues that the IJ's finding that she was not a credible witness is not supported by substantial evidence. She contends that the IJ found her testimony lacked credibility because she is an "elderly [56-year-old] Indo-Fijian lady" whose "expressions" were misunderstood by the IJ. We review credibility findings to ascertain whether they are supported by substantial evidence. Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir.1992). Substantial evidence consists of facts which a "reasonable mind might accept as adequate to support a conclusion." Id. The BIA gives great weight to an IJ's findings regarding the credibility of a witness. Matter of Pula, 19 I. & N.Dec. 3033, 467, 471 (BIA 1987). We accord substantial deference to the findings of an IJ because an IJ is, "by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth." Sarvia-Quintanilla v. INS, 767 F.2d 1387, 1395 (9th Cir.1985). In Saballo-Cortez v. INS, 761 F.2d 1259, 1266 (9th Cir.1985) we held that "we must defer to an immigration judge's express and implied findings that the alien's testimony is not credible if the record supports such findings." Saballo-Cortez v. INS, 761 F.2d 1259, 1266 (9th Cir.1985). Before we can accept credibility findings, however, the trier of fact must provide a "specific, cogent reason" for his or her adverse ruling. Berroteran-Melendez, 955 F.2d at 1256; Turcios, 821 F.2d at 1399; Damaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986).
 
 
 9
 An applicant may support an asylum claim solely on his or her testimony. If documentary evidence is not available, the applicant's testimony will suffice if it is credible, and refers to specific facts that articulate a well-founded fear of persecution. Zavala-Bonilla v. INS, 730 F.2d 562, 567 (9th Cir.1984); Cardoza-Fonseca v. INS, 767 F.2d 1448, 1453 (9th Cir.1985), aff'd, 480 U.S. 421 (1987); See Matter of Mogharrabi, I. & N. Dec. 3028, 439, 443 (testimony alone can suffice to establish a well-founded fear where it is "believable, credible and plausible").
 
 
 10
 We have previously stated that a witness lacks credibility where there are "internal inconsistencies" or where the testimony "lacks the ring of truth." McMullen v. INS, 658 F.2d 1312, 1318 (9th Cir.1981). The record shows that the IJ in this case enumerated specific, cogent reasons for finding that Kumari's testimony was not credible. The IJ stated that Kumari's testimony and her declarations were inconsistent in describing the taking of her business by the army. These findings are well supported by the evidence. In Kumari's original declaration she stated the "army used my cars by force." In her second declaration she alleged, "three cars were stolen, two were set on fire and some were taken by force by the army for their use." These allegations conflict with her testimony that, during the coup in Fiji in 1987, all of her taxi cabs were burned. On cross-examination, she testified that the army took her cars away one by one. She also stated that the family continued to provide taxi service for a time after the coup. In addition, she testified that the family was still operating the taxi business when she left Fiji.
 
 
 11
 Because Kumari's claim that she has a well-founded fear of persecution is based on her allegations that the army destroyed her business, these discrepancies in her statements regarding the effect of the coup on her business are significant in weighing her credibility. Her testimony and declarations were contradictory regarding whether she was in Fiji or the United States when, as she claims, the army confiscated her business. If her testimony concerning the taking of her business was not truthful, then her testimony that she was seeking asylum due to past persecution and a well-founded fear of future persecution was substantially impeached.
 
 
 12
 The IJ also determined that Kumari was a non-credible witness due to the inconsistencies in her testimony concerning her entry into the United States. The record supports the IJ's findings. In her original declaration Kumari alleged that she came to the United States after she obtained a visa "by chance" to visit her son. At the asylum hearing she testified that she was sent to this country by her oldest son to seek refuge because she had been tortured in Fiji. In her request for a nonimmigrant tourist visa, however, Kumari told the American Consul that she planned on staying in the United States for six months before returning to Fiji.
 
 
 13
 Kumari also attempted to support her claim that she had a well-founded fear of persecution by alleging that the army seized her home before she applied for asylum in the United States. The IJ did not believe her testimony that her home was seized by the army because of her inconsistent statements regarding her home address. Kumari listed her address as "29 Marlows" and her husband's residence as "known address" on her asylum application. On her G-325 form (exhibit 5), she stated that she resided at "known address" from June 1962 until she came to the United States. In rejecting her testimony that the home was seized by the forces supporting the coup, the IJ reasoned, "I take this as clear indication that far from the family being put out of their home and being confiscated by the government, that her husband and children still reside in the home ... at least as of October 1988 when she initially applied for asylum."
 
 
 14
 Kumari's testimony is also inconsistent regarding how many times and how long she was detained in the army camp. In her second declaration she stated that she was taken once to do laundry for a few hours. At the hearing, she testified that she was detained in an army camp about two or three times and sometimes for the night and other times for the whole day and night. Kumari's testimony is also inconsistent and vague as to what happened to her at the camp. First, it is unclear whether the treatment she described happened to her personally or to others. Kumari testified that at the camp, the army tortured, shot people, forced people to do laundry on their knees and "showed you the gun." During questioning by her attorney, she was admonished by him to testify to her own experiences. He stated, "But what happened to you. Just you." Kumari replied, "The army, they ... they didn't shoot you and they ask people to bend down and they take away all of our money and...." Kumari testified that she was beaten by soldiers and the soldiers made her do laundry every time. She also testified, however, that they took "us" to the camp three or four times to do laundry. She later stated that the soldiers only beat her two or three times.
 
 
 15
 Kumari's documentary evidence also cast doubt on her testimony that she feared returning to Fiji because she would suffer persecution because she is an Indian and a Hindu. Kumari submitted newspaper articles to show the general social conditions in Fiji. The news accounts described the burning of three temples and a mosque by eighteen youths who belonged to the Methodist Church. These exhibits do not support her testimony that she faces religious persecution at the hands of government forces because she is a Hindu. Instead, the news accounts show that Fiji government officials did not condone this act. The Acting Prime Minister of Fiji, Mr. Josevata Kamikamica, was quoted by the newspaper reporter as stating: "Everything will be done to protect the rights of each individual, which includes the right of each individual to practise the religion of his or her choice." The Fijian Cabinet also informed the press that "law and order will be maintained." Furthermore, the news accounts reveal the youths responsible for the desecration were arrested.
 
 
 16
 Kumari also submitted a newspaper article that described the activities of students who protested against "the encouragement of political activity on campus by university staff." The article states that 200 Fijian students were involved in the peaceful protest. This news report demonstrates that the Fijian government allows peaceful protest and is tolerant of diverse views.
 
 
 17
 Kumari contends that the failure of the IJ to take into consideration the fact that she is elderly and uneducated, and that she testified to the best of her abilities, requires reversal. She also argues that the IJ did not take into account that she was still traumatized by the effects of the treatment she received by the army. During the hearing, when asked for more details by her attorney about what happened during the coup she stated, "I am old now so I forget some of the things, but whatever I remember, I tell you."
 
 
 18
 The fact that a person is uneducated does not affect the ability to testify consistently. Kumari was provided an interpreter throughout the proceedings. She did not object during the asylum hearings on the ground that she did not understand the interpreter's translation.
 
 
 19
 Kumari's claim that she is still traumatized by the event does not explain the inconsistencies in her testimony. The alleged events occurred only eighteen months before the asylum proceedings. Furthermore, the record does not show that Kumari has sought medical treatment for any mental or emotional problem caused by the army's alleged conduct.
 
 III.
 
 20
 We conclude that the BIA's adverse credibility finding was supported by substantial evidence. Kumari's testimony was inconsistent and vague. The IJ supported his findings with specific examples of inconsistencies in Kumari's testimony and the facts set forth in the declarations she filed in support of her asylum applications. Her testimony was inconsistent concerning the loss of her business and her home, and how she entered the United States. In addition, the documentary evidence she introduced contradicted her testimony.
 
 
 21
 The petition for review is DENIED and the decision of the BIA is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3