Julio Cesar **BERROTERAN-MELENDEZ, et al.,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 90–70327.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 12, 1991.*

Decided Feb. 3, 1992.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4(a) and Fed.R.App.P. 34(a).

Francisco J. Barba, San Francisco, Cal., for petitioner.

Donald A. Couvillon, Office of Immigration Litigation, Dept. of Justice, Washington, D.C., for respondent.

Before CANBY and KOZINSKI, Circuit Judges, and CARROLL **, District Judge.

---

** The Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

1. Both adult petitioners, Julio and Ruth Berroteran–Melendez, filed applications for asylum. The petitioners' claim of persecution, however,

CARROLL, District Judge:

## OVERVIEW

Julio Cesar Berroteran–Melendez, his wife Ruth, and their two children (collectively "petitioners") petition for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") decision denying their request for asylum and withholding of deportation.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Julio Cesar Berroteran–Melendez, his wife, and their two minor children are citizens of Nicaragua. On January 3, 1988, the Immigration and Naturalization Service ("INS") issued each of them an order to show cause ("OSC") why they should not be deported for entering the United States without inspection.

At a joint deportation hearing, the petitioners, represented by counsel, admitted the allegations in the OSC, conceded deportability, and requested political asylum. The IJ continued the hearing in order to allow the petitioners an opportunity to file their applications for political asylum pursuant to Section 208(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a), and for withholding of deportation pursuant to Section 243(h) of the INA, 8 U.S.C. § 1253(h).

The petitioners appeared with counsel at the October 7, 1988 continuation of the hearing. The IJ rendered an oral decision denying the petitioners' request for asylum and withholding of deportation, but granting their request for voluntary departure. On October 12, 1988, the petitioners filed a timely notice of appeal to the BIA. On June 8, 1990, the BIA affirmed the IJ's decision and dismissed the appeal.

. On July 2, 1990, the petitioners filed a timely petition for review with this court. Subsequently, on September 4, 1990, the

is based solely on Julio Berroteran–Melendez's (hereinafter, "Berroteran–Melendez") testimony. Julio's spouse Ruth, and their two children are by regulation included within Julio's application. *See* 8 CFR § 208.2 (1990).

petitioners filed a motion to reopen deportation proceedings with the BIA and a motion with this court to suspend judicial proceedings pending the BIA's ruling on the motion to reopen. On September 7, 1990, a deputy clerk issued an order denying the petitioners' motion to suspend proceedings. On September 18, 1990, the petitioners filed a motion for reconsideration of the order denying the motion to suspend proceedings, which was denied without prejudice to a renewed motion at the completion of briefing.

On December 21, 1990, a deputy clerk issued an order to the petitioners to voluntarily dismiss their appeal for lack of jurisdiction, or alternatively to show cause why their appeal should not be dismissed. The OSC was referred to this panel.

## DISCUSSION

### I. Jurisdiction

The petitioners contend that this Court lacks jurisdiction over this appeal as the BIA has not yet ruled on the pending motion to reopen. The BIA, however, contends that this Court has jurisdiction under 8 U.S.C. § 1105a(a) because the BIA's order of dismissal was a final order of deportation over which this Court has jurisdiction.

■ If a petitioner files a motion to reopen *before* seeking judicial review with this Court an "otherwise appealable final order becomes no longer appealable ... until the motion is denied or the proceedings have been effectively terminated." *Fayazi–Azad v. INS,* 792 F.2d 873, 874 (9th Cir.1986). *See Chu v. INS,* 875 F.2d 777, 779–81 (9th Cir.1989). If the motion to reopen is subsequently denied by the BIA, both the denial of the motion to reopen and the original deportation order are reviewable by this Court upon timely petition. *See Hyun Joon Chung v. INS,* 720 F.2d 1471, 1474 (9th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984).

2. Unlike a petition for review, which automatically stays the order of deportation, an administrative motion to reopen filed with the BIA does

■ In *Chu,* this Court based its holding that it was without jurisdiction on the rationale that it was Congress' intent to avoid piecemeal litigation by having a single judicial review of all questions relating to an alien's deportation. *See Chu,* 875 F.2d at 779, *citing Chung,* 720 F.2d at 1474. Such a policy avoids duplication and waste of judicial and agency resources, and promotes the judicial policy of allowing administrative agencies the opportunity to correct their own mistakes. *See generally, Chung,* 720 F.2d at 1474.

However, the petitioners here filed their motion to reopen *after* they filed their petition for review. While this Court has never specifically considered whether we have jurisdiction when a motion to reopen is filed after a petition for review is filed, this Court, without explanation, has exercised jurisdiction in such circumstances. *Wall v. INS,* 722 F.2d 1442, 1443 (9th Cir.1984).[2]

Other circuits have similarly exercised jurisdiction despite a pending motion to reopen. We agree and thus hold that we have jurisdiction pursuant to 8 U.S.C. § 1105. We turn now to the question whether a suspension of appellate proceedings is appropriate pending the BIA's decision.

■ In *Lozada v. INS,* 857 F.2d 10, 12 (1st Cir.1988), the First Circuit held the case in abeyance pending the BIA's ruling on the motion to reopen, and decided the case on the merits when the BIA denied the motion. In *Wall,* 722 F.2d at 1443, this Court suspended appellate proceedings pending the BIA's disposition of the motion to reopen. The decision to stay was an exercise of judicial discretion; we neither stated nor implied that the court was required to suspend proceedings pending resolution of the motion to reopen.

In *Figeroa v. INS,* 886 F.2d 76, 77 n. 1 (4th Cir.1989), on the other hand, the Fourth Circuit decided the merits of an alien's ineffective assistance of counsel claim despite a pending motion to reopen filed after his petition for judicial review.

not provide an automatic stay of deportation. *Compare* 8 U.S.C. § 1105a(a)(3), and 8 C.F.R. §§ 3.8(a), 103.5 and 242.22.

The Court did not discuss its exercise of jurisdiction.

In *Alleyne v. INS*, 879 F.2d 1177, 1181–82 n. 7 & 8 (3rd Cir.1989), the Third Circuit exercised jurisdiction but explicitly refused to hold the case in abeyance. The holding depended in large part on the previous Third Circuit decision in *Nocon v. INS*, 789 F.2d 1028 (3rd Cir.1986), in which the Court had held, relying on the expressed Congressional policy of preventing delay once immigration status has been determined, that the filing of a motion to reconsider did not toll the limitations period for filing a petition for review in the Court of Appeals. On the tolling issue, Ninth Circuit authority is to the contrary, and holds that the filing of a motion to reopen or reconsider tolls the limitations period for filing a petition for review. *Chung*, 720 F.2d at 1473; *Fayazi*, 792 F.2d at 874. Arguably, under Ninth Circuit law, there is no substantive difference between the filing of a motion to reopen *before* the petition for review, in which case the time for filing the petition runs from the date of the decision on the motion to reopen, and where a motion to reopen is filed *after* the petition for review and the appellate proceedings are suspended. The appellate process would not be further delayed.

However, the *Alleyne* Court also noted that the practice of suspending appellate proceedings would effectively create an automatic stay of deportation pending the outcome of a motion to reopen. This result would be contrary to administrative regulations that "[t]he filing of a motion to reopen or a motion to reconsider shall not serve to stay the execution of any decision made in the case." *Alleyne*, 879 F.2d at 1181–82 n. 7., *citing*, 8 C.F.R. § 3.8(a) (1988).

While suspending proceedings would promote judicial efficiency, *see Chu*, 875 F.2d at 779, the potential for abuse of the process to circumvent the BIA's discretionary power to grant or deny a stay of deportation pending a motion to reopen outweighs concerns with efficiency. After balancing these concerns in the factual context of this case, we elect not to stay judicial proceedings.

## II. Standard of Review

■ Relief pursuant to Section 208(a) of the INA is within the discretion of the Attorney General, *INS v. Cardoza–Fonseca*, 480 U.S. 421, 423, 107 S.Ct. 1207, 1208–09, 94 L.Ed.2d 434 (1987), and we review the BIA's decision not to grant relief under an abuse of discretion standard. *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1282 n. 9 (9th Cir.1984). We review the BIA's factual determination that an alien has failed to prove a well-founded fear of persecution for substantial evidence. *Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1578 (9th Cir. 1986). We also review the BIA's decision to grant or deny the withholding of deportation for substantial evidence. *Echeverria–Hernandez v. INS*, 923 F.2d 688, 690 (9th Cir.1991).

■ The substantial evidence standard does not permit the Court to reverse the BIA solely because the Court disagrees with the BIA's evaluation of the facts, but requires that "the BIA's conclusion, based on the evidence presented, be substantially reasonable." *Del Valle v. INS*, 901 F.2d 787, 790 (9th Cir.1990), *citing*, *Diaz–Escobar v. INS*, 782 F.2d 1488, 1493 (9th Cir. 1986).

## III. Merits

■ To be eligible for asylum, applicants must establish that they are refugees based on either past persecution[3] or a "well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[4] Section 101(a)(42) of the INA; 8 U.S.C. § 1101(a)(42); *See also, Desir v. Ilchert*, 840 F.2d 723, 726 (9th Cir.1988). The burden is on the alien to establish eligibility for asylum. *Estrada–*

---

**3.** Past persecution alone, independent of establishing a well-founded fear of future persecution, can suffice to establish an asylum claim. *Desir v. Ilchert*, 840 F.2d 723, 729 (9th Cir.1988).

**4.** Persecution involves "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." *Desir*, 840 F.2d at 727.

*Posadas v. INS,* 924 F.2d 916, 918 (9th Cir.1991).

Berroteran–Melendez's application is largely based on his work with his uncle, Leonidas Guadamuz, who was Chief of the Driver's License Section in the Traffic Police in Managua, Nicaragua until his retirement in 1977. Berroteran–Melendez claimed that Guadamuz had been granted asylum in the United States.

Berroteran–Melendez asserts that he was arrested at the house of his uncle (who was then in the United States) by the Sandinistas in 1979 during their occupation of Managua, and was incarcerated and interrogated for 15 days. Petitioner maintains that throughout the early 1980's, the threats, beatings, and interrogations against him intensified: he was arrested six or seven times and was detained three times. In 1982, he was held for twenty-five days, and in 1986, he was detained for two days. During one of these periods of incarceration his jaw was broken.[5] He also claimed that he could not obtain ration cards due to his connection with the Somoza government and had to buy food on the black market. He decided to leave Nicaragua in 1986.

### 1. Well–Founded Fear of Persecution

 To establish eligibility for asylum based on a well-founded fear of future persecution, applicants must demonstrate both an objective and subjective fear of persecution. *Estrada–Posadas,* 924 F.2d at 918. Thus, applicants must show both a "genuine" subjective fear and a "reasonable possibility" of persecution. *Desir,* 840 F.2d at 726. An asylum applicant's "candid, credible, and sincere testimony" demonstrating a genuine fear of persecution satisfies the subjective component of the well-founded fear standard. *See Blanco–Comarribas v. INS,* 830 F.2d 1039, 1042 (9th Cir.1987). The objective component requires "credible, direct and specific evidence in the record, of facts that would support a *reasonable* fear that the petition-

er faces persecution." *Rodriguez–Rivera v. INS,* 848 F.2d 998, 1002 (9th Cir.1988) (emphasis in original). *See also, Zacarias v. INS,* 921 F.2d 844, 849 (9th Cir.1990).

 The BIA adopted the IJ's findings that Berroteran–Melendez's testimony was not credible. This Court reviews the credibility findings of the BIA and the IJ for substantial evidence. *See Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir.1987). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 1398. An IJ's credibility findings are given substantial deference by the reviewing court, but must be supported by a "specific, cogent reason" for the disbelief. *Id.* at 1399.

 In finding Berroteran–Melendez's testimony incredible, the IJ stated: "The case does not hang together. His testimony does not have a ring of truth to it. It does not seem logical or consistent; it is lacking in detail. When we deal with the more important parts, he is not a credible witness and I cannot give him asylum on this record".

First, the IJ found that there were discrepancies between Berroteran–Melendez's application for asylum and his testimony. In his application for asylum, Berroteran–Melendez states that he had been incarcerated only once by the Sandinistas. At the hearing, however, he testified he had been taken to jail on three other occasions, and that on one of these occasions his jaw was broken. His application does not mention that the Sandinistas broke his jaw. Next, while he testified that his "last" incarceration was in 1986, his application states that he was arrested on several occasions, but does not indicate that these arrests resulted in other incarcerations. These discrepancies are not minor, and Berroteran–Melendez offered no reasons for the discrepancies below and offers none on appeal.

Additionally, the IJ did not believe Berroteran–Melendez's testimony that Guadamuz was a captain in the National Guard,

---

5. There is some discrepancy regarding when Berroteran–Melendez's jaw was broken: the BIA decision reflects that he testified his jaw

was broken during his initial arrest in 1979, although his brief on appeal states that this occurred in 1986.

and the BIA adopted this finding in its decision. In fact, the identification badges submitted into evidence by Guadamuz identified him as a captain of the Managua Police Department, not the National Guard. Moreover, on appeal the petitioners abandon their argument that Guadamuz was a National Guardsman, and indicate that he was a policeman.

The record also supports the IJ's findings that Berroteran–Melendez's testimony was lacking in detail. For instance, although Berroteran–Melendez testified that the Sandinistas tortured him on different occasions, his testimony contained no dates or descriptions of these incidents, except for his testimony that the Sandinistas had broken his jaw in 1979. Petitioners' brief on appeal states that this incident occurred in 1986.

The IJ and the BIA also found it difficult to believe that Berroteran–Melendez would be continually harassed through 1986 as a result of his relationship with Guadamuz, when Guadamuz had been in the United States since 1978.

Berroteran–Melendez contends that the adverse credibility findings of the IJ and the BIA were based on factual error because neither the IJ nor the BIA believed that Guadamuz had been granted asylum in the United States. Although the petitioners have submitted a letter from the District Director of the INS confirming Guadamuz's grant of asylum on appeal, this evidence was not presented below. Even if this evidence had been presented below, petitioner's argument would fail. The BIA did not conclude that Guadamuz had been denied asylum, but merely concluded that there was insufficient evidence to find that he had been granted asylum. Moreover, there was otherwise substantial support for the BIA's finding that Berroteran–Melendez lacked credibility.

Berroteran–Melendez also contends that the BIA erred in determining that the new-

ly elected government of Violeta Chamorro in Nicaragua diminished his claim of a well-founded fear of persecution.

While this Court has not previously considered whether the BIA may take administrative notice of the change in government in Nicaragua, the Seventh Circuit has considered this issue with respect to Poland. In *Kaczmarczyk v. INS*, 933 F.2d 588, 593–94 (7th Cir.1991), the Seventh Circuit held that the BIA had the authority to take official notice not only of the fact that political circumstances had changed in Poland, but that they had changed in such a way as to render the petitioner's fear of future persecution insupportable. *See also, Kubon v. INS*, 913 F.2d 386, 388 (7th Cir.1990). The Court cautioned, however, that the BIA should not blindly apply this information to automatically deny every asylum application submitted by a Polish alien, and that administrative notice should not be used as a substitute for an analysis of the facts of each applicant's individual circumstances. *Kaczmarczyk*, 933 F.2d at 594.

Here, the petitioners argue that under the new Nicaraguan government, the Sandinistas maintain control of the military and the police and the petitioners will not be afforded any greater degree of safety under the new administration.[6] Here we need not decide precisely what effect may be given to the change of government, however, because Berroteran–Melendez offers no credible support for his assertion that he is likely to be persecuted in Nicaragua under either the old or the new government.

Given the inconsistencies and the lack of detail of the petitioner's application for asylum, substantial evidence supports the IJ's and BIA's finding. See *Turcios*, 821 F.2d at 1399. Because Berroteran–Melendez's failed to present "candid, credible and sincere testimony" demonstrating a genuine fear of persecution, he failed to satisfy the subjective component of the well-founded

6. The petitioners made the same argument in *Kaczmarczyk*. There the petitioners argued that under the new coalition government in Poland, the communists still maintained control of the military and the police. The Court declined to give much weight to their argument that they were likely to be persecuted under the new government because it lacked support in the record. *Kaczmarczyk*, 933 F.2d at 594.

fear standard. *See Blanco–Comarribas,* 830 F.2d at 1042. Therefore, he failed to establish eligibility for asylum. *See Estrada–Posadas,* 924 F.2d at 918. Accordingly, the BIA did not err in upholding the IJ's denial of the petitioners' request for asylum on this ground.

Because the petitioners failed to demonstrate a well-founded fear of persecution required for asylum, this Court does not need to address whether the petitioners would meet the more stringent standard of a clear probability of persecution required for withholding of deportation. *See De Valle,* 901 F.2d at 790; *INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984).

### 2. Past Persecution

Berroteran–Melendez contends that even if he is not eligible for asylum based on a well-founded fear of future persecution, he is eligible for asylum based on past persecution alone. Specifically, he contends that his "experience of being imprisoned, having his property confiscated, being interrogated, beaten and being accused of being a counterrevolutionary" constitutes past persecution on account of actual and imputed political opinion.

 Because the BIA expressly adopted the IJ's finding that Berroteran–Melendez's testimony lacked credibility, there is no basis for the claim of past persecution. Accordingly, Berroteran–Melendez's contention that he is eligible for a grant of asylum based on past persecution also lacks merit.

### 3. Equal Protection

 Finally, the petitioner contends that the IJ and the BIA violated his equal protection rights because his claim for asylum is stronger than Guadamuz's, and Guadamuz was granted asylum in the United States. Classifications among aliens are evaluated under the rational basis test. *See Paointhara v. INS,* 708 F.2d 472, 473 (9th Cir.), *modified and reh'g denied,* 721 F.2d 651 (9th Cir.1983). Under the rational basis test, the person alleging the equal protection violation bears the burden of

establishing a prima facie case of an uneven application of the law. See generally, *McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991).

 However, petitioner is not contesting a classification based on his status as an alien; he is alleging that he was treated differently than another alien. He does not state on what basis he was treated differently, and the fact that he received a different decision than did another alien does not raise an equal protection issue.

### CONCLUSION

The BIA had substantial evidence to find that Berroteran–Melendez failed to present "candid, credible and sincere testimony" demonstrating a genuine fear of persecution or credible evidence of past persecution. Further, Berroteran–Melendez has not sustained his burden of demonstrating an equal protection violation.

In order to afford the petitioners the opportunity to seek a stay of deportation from the BIA pending resolution of the motion to reopen, we stay our mandate for 30 days. *See Bu Roe v. INS,* 771 F.2d 1328, 1335 (9th Cir.1985); *Fayazi–Azad,* 792 F.2d at 874.

AFFIRMED.