35 F.3d 570
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Luan BERISHA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70069.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1994.
Decided Aug. 31, 1994.
 
 1
 Before: WIGGINS and THOMPSON, Circuit Judges, and EZRA,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 This case involves the impact of changing circumstances on asylum applications. One of the happy developments of recent years has been the disintegration of repressive regimes all over the world. Unfortunately, the positive changes are occasionally marred by resurgence of atavistic tendencies in certain areas.
 
 
 4
 Luan Berisha ("Petitioner"), an ethnic Albanian and native of the Kosovo region of Yugoslavia, applied for asylum in 1986. An immigration judge denied Petitioner's applications for asylum and withholding of deportation on February 4, 1988. Petitioner appealed to the Board of Immigration Appeals ("BIA") eight days later. The BIA finally came to its decision affirming the immigration judge on November 10, 1992.
 
 
 5
 While the BIA was considering the appeal, fundamental changes occurred in Yugoslavia.[1] Under Tito, Kosovo had been an autonomous province within the republic of Serbia and had enjoyed separate representation in the Yugoslav confederacy and autonomy comparable to that of the other republics. In 1989, the Serbian government imposed martial law on Kosovo. In 1991, the Socialist Federal Republic of Yugoslavia ceased to exist. Croatia, Slovenia, Macedonia, and Bosnia-Herzegovina declared independence. The two remaining republics, Serbia and diminutive Montenegro, reconstituted themselves into the Federal Republic of Yugoslavia. Citizens of Kosovo, who are overwhelmingly Muslim and Albanian, voted for independence in an unofficial referendum but have not attempted actually to assert their independence. The international community now recognizes several of the former constituent republics as sovereign states, but most (including the United States) do not recognize Kosovo as independent, possibly out of fear that to do so will offend the Serbs and result in violence against the Kosovars.
 
 I. Factual Determinations
 
 6
 We first address the administrative decisions based on the record developed before the immigration judge. The immigration judge decided that Petitioner did not have a well-founded fear of persecution in his home country. In order to be eligible for discretionary asylum, Petitioner must establish that he is a "refugee." 8 U.S.C. Sec. 1158(a). A "refugee" is defined as
 
 
 7
 any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of ... political opinion....
 
 
 8
 8 U.S.C. Sec. 1101(a)(42)(A).
 
 
 9
 We review for substantial evidence the BIA's factual determination that an alien seeking asylum has failed to prove well-founded fear of persecution. Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992). Failure to establish that one is a refugee eligible for discretionary asylum is also fatal to a claim for mandatory withholding of deportation. Id. at 1258. In order "to obtain judicial reversal of the BIA's determination, [Petitioner] must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 112 S.Ct. 812, 817 (1992).
 
 
 10
 We cannot conclude that the evidence in the record was so compelling as to require a grant of asylum or withholding of deportation. Both the BIA and the immigration judge believed that Petitioner fled his country because of poor general economic conditions, not the alleged discovery, while abroad, that police were seeking him at home. We do not question that credibility determination. The other reasons alleged for the fear of persecution are not compelling. Petitioner apparently left Yugoslavia without having completed his military service, and may be subject to penalties for that desertion. However, compulsory military service does not qualify as persecution. Rodriguez-Rivera v. INS, 848 F.2d 998, 1005 (9th Cir.1988) (holding that the government's attempts to recruit petitioner into the army do not constitute persecution); Kaveh-Haghigy v. INS, 783 F.2d 1321 (9th Cir.1986) (per curiam) (holding that being drafted into the army to fight an allegedly illegal war is not persecution). Being searched for contraband upon reentering Yugoslavia, as Petitioner alleges he was, is likewise hardly conclusive evidence of persecution. We find no error in the BIA's affirmance of the finding, based on the record developed at the time of Petitioner's hearing, that Petitioner did not have a well-grounded fear of persecution if returned to Yugoslavia.
 
 II. Due Process
 
 11
 Petitioner claims that his due process rights have been violated by the BIA's determination that he did not have a well-founded fear of persecution where he has not been afforded the opportunity to present evidence on the change in conditions. Petitioner bases his argument on the law of this circuit that the BIA and immigration judge may take administrative notice of facts relevant to applications for asylum. See Castillo-Villagra v. I.N.S., 972 F.2d 1017 (9th Cir.1992). While that case and its progeny are not directly helpful to Petitioner's argument, because they deal with sua sponte notice of facts adverse to the alien, those holdings do imply some support for the principle that the asylum determination is to be based on current conditions and facts. It might be argued that the long periods of time that immigration adjudications and appeals consume require processes that allow new information to be considered, regardless of the side it favors.
 
 
 12
 We find, however, no authority to control a resolution of such a claim on the merits. The Seventh Circuit has confronted a similar claim arising from the same events. Osmani v. INS, 14 F.3d 13 (7th Cir.1994). Despite obvious disappointment in the BIA's failure to inform itself of relevant facts, id. at 14, the court there was not required to resolve the legal question because the changed circumstances rendered persecution less, rather than more, likely. In this case, unlike Osmani, the changes have rendered the situation at home much less hospitable to Petitioner, who would be returned to the new Yugoslavia (read Serbia), rather than one of the newly independent states such as Macedonia.
 
 
 13
 The BIA recognized that conditions had changed in Yugoslavia, and even hinted that it realized that it may be inappropriate to deport Petitioner to a country that, though sharing a similar name, is not the same one to which Petitioner was ordered deported. It declined to address those arguments because they were not raised by proper motion. We are unsure if it is at all feasible for a petitioner to keep the BIA continually updated--for a period of years--on changes in the circumstances abroad, especially changes in the Balkans, where the facts change on an almost daily basis. The BIA, on the other hand, is empowered to take administrative notice of changed circumstances.
 
 
 14
 The alternative remedy available to Petitioner is that prescribed by INS regulations. Petitioner may move the BIA to reopen the deportation proceedings after the direct review of the immigration judge's determination is complete. Rogue-Carranza v. INS, 778 F.2d 1373, 1373-74 (9th Cir.1985). In fact, Petitioner has already filed such a motion. That process not only minimizes interference in agency procedures but also allows the development of a record that is adequate for review by this court. Id. at 1374. However, we are also aware that, "as a practical matter, the remedy of a motion to reopen may be unavailable, because the petitioner may be deported and the motion may become moot prior to decision." Castillo-Villagra, 972 F.2d at 1024.
 
 
 15
 This court generally will not reach due process claims such as Petitioner's where there exist administrative remedies for situations giving rise to the claims. "Only if we could say in advance of resort to the" administrative procedure "that it is incapable of affording due process to petitioner[ ] could we conclude that [he has] shown any legal excuse for [his] failure to resort to it or that [his] constitutional rights have been or will be infringed." Bakersfield City School District v. Boyer, 610 F.2d 621, 626 (9th Cir.1979) (quoting Yakus v. United States, 321 U.S. 414, 434-35 (1944)). In this case, Petitioner may well receive a full and fair adjudication of his request for asylum, in light of the changed circumstances in Yugoslavia and Kosovo, through the reopening of his case by the BIA.
 
 
 16
 Petitioner's "due process claim involves factual determinations that we are not in a position to resolve." Dhangu v. INS, 812 F.2d 455, 461 (9th Cir.1987). Furthermore, Petitioner's pending motion to reopen may afford him due process. Id. We therefore decline to consider his claim here. However, we stay our mandate in order to ensure that Petitioner has an adequate opportunity to pursue his administrative remedies. Id.; see also Rogue-Carranza, 778 F.2d at 1374.
 
 
 17
 The petition for review is DENIED. We stay our mandate for such time as is necessary for disposition of Petitioner's motion currently pending before the BIA. The INS is ordered to report to this panel on the status of this case, and Petitioner's motion before the BIA, on or before February 1, 1995.
 
 
 
 *
 Hon. David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We do not presume to make determinations of fact in this case. Instead, we recite certain general propositions that reflect the probable scope of the changes and that have not yet been the subject of a factual hearing