87 F.3d 1319
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Azeez Jimmy IMOHI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70705.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 11, 1996.*
Decided June 5, 1996.
 
 1
 Before: GOODWIN and HAWKINS, Circuit Judges, and WARE, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Azeez Jimmy Imohi challenges the Board of Immigration Appeals' (BIA) order denying both Imohi's application for asylum and his request for a withholding of deportation based on refugee status. The BIA found that Imohi's testimony regarding his alleged refugee status lacked credibility. We agree and deny Imohi's petition.
 
 I.
 
 4
 Imohi, a native citizen of Nigeria, first entered the United States on January 15, 1980. Imohi overstayed his visit, however, and deportation proceedings resulted in his agreement to voluntarily depart the country in May 1981. Imohi went back to Nigeria, but then returned to the United States under a false name on or about October 1981. The present deportation proceedings were initiated in June 1994.
 
 
 5
 At his initial deportation hearing, Imohi conceded to the factual allegations in support of deportation, but asked the immigration judge how long it would take to apply for asylum. After hearing the judge's answer, Imohi requested time to apply for asylum on the basis of Nigeria's practice of female circumcision. Imohi claimed that his return to Nigeria would infringe upon his reproductive rights by jeopardizing any female offspring he may have in the future.
 
 
 6
 In contrast to this reproductive rights argument, Imohi's asylum application alleged that he had been subject to persecution in Nigeria because he had founded a grass roots organization known as "People Against Female Circumcision" (PAFC). The application and Imohi's testimony relayed several incidents of threats he received from the "Elders," men who enforced female circumcision in the community. Imohi claimed that the Elders had sent dead pigeons soaked in palm oil and blood to his home and his aunt's home. He alleged further that one of the pigeons had a note attached to it which warned "your life will come to an end soon." After receiving these threats Imohi fled the area; within three months he learned that his aunt was dead. Imohi then left Nigeria and came to the United States for the first time.
 
 
 7
 Imohi alleges that the threats resumed when he returned to Nigeria a year later. Thus he again departed for the United States, where he has remained until the present. He claims that he can not stand silent in the face of female circumcision, and believes the persecution will resume if he returns to Nigeria.
 
 
 8
 The immigration judge and the BIA found Imohi's testimony incredible and denied both his application for asylum and his request for a withholding of deportation. Imohi sought review from this Court.
 
 II.
 Standard of Review
 
 9
 An alien seeking either asylum or withholding of deportation carries the burden of proving eligibility for relief. However, the standard of proof is different for each. For withholding of deportation the alien must show that deportation will more likely than not result in persecution. I.N.S. v. Stevic, 467 U.S. 407, 413 (1984). For asylum, the plaintiff need only show a "well-founded fear" of persecution, a less exacting standard than the "more likely than not" standard utilized for withholding of deportation. I.N.S. v. Cardoza-Fonseca, 480 U.S. 421 (1987). The "well-founded fear" standard has both an objective and a subjective element.
 
 
 10
 The subjective component may be satisfied by an applicant's credible testimony that he genuinely fears persecution. The objective component requires a showing by credible, direct, and specific evidence of facts supporting a reasonable fear of persecution on the relevant ground.
 
 
 11
 Shirazi-Parsa v. I.N.S., 14 F.3d 1424, 1427 (9th Cir.1994) (internal quotations and citations omitted).
 
 
 12
 We must uphold the BIA's determinations regarding asylum and withholding of deportation if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105(a)(4). See also, I.N.S. v. Elias-Zacarias, 502 U.S. 478, 482 (1992). We will only reverse if the evidence presented is such that "a reasonable fact finder would have to conclude that the requisite fear of persecution existed." Elias-Zacarias at 481 (citation omitted). This deferential standard applies to the BIA's determinations of credibility as well as its determinations of fact. Berroteran-Melendez v. I.N.S., 955 F.2d 1251, 1256 (9th Cir.1992).
 
 Application
 
 13
 We conclude that the BIA's decision here must be upheld. The BIA's supported its credibility finding with specific, cogent reasons. Id. The BIA first noted that Imohi did not apply for asylum during his first deportation proceedings in 1981; nor did he apply when he returned to the United States; nor did he apply at any other time prior to being on the verge of deportation and discovering how long it would take to process the application. The BIA then referenced the credibility factors discussed by the immigration judge. Those factors included (1) the discrepancy between Imohi's application and his testimony regarding which pigeon, the first or second, included the death note; (2) the lack of corroborating evidence that Imohi established PAFC, when one would expect such evidence to exist; (3) the incredibility of Imohi's claim he did not apply for asylum during the 1981 proceedings because he did not realize how serious the Elders were when he also alleged that his aunt had been murdered by the Elders prior to this time; and (4) the inconsistency between the alleged strength of Imohi's beliefs and his inactivism since coming to the United States. In addition, we note the discrepancy between Imohi's initial basis for asylum--the infringement on his reproductive rights--and the later claim that he had been previously persecuted for actively dissenting against female circumcision. These facts provide more than substantial evidence for the BIA's decision.
 
 
 14
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3