UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MESFIN ASFAHA,
Petitioner,

v.

No. 97-2557

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A29-925-095)

Submitted: April 30, 1998

Decided: May 21, 1998

Before ERVIN and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Allan Ebert, LAW OFFICES OF ALLAN EBERT, Washington,
D.C., for Petitioner. Frank W. Hunger, Assistant Attorney General,
Karen Fletcher Torstenson, Assistant Director, Tina Potuto, Office of
Immigration Litigation, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mesfin Asfaha petitions for review of a final order of the Board of Immigration Appeals (Board) denying his application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1997). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1997).

2

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id. ; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Asfaha is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Asfaha] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Asfaha, who entered the United States as a nonimmigrant visitor in July 1992, disagrees with the Board's finding that he lacked credibility and failed to qualify for asylum because of past persecution he suffered on account of his political opinion. Our review reveals, however, that substantial evidence supports the Board's finding that Asfaha did not satisfy his statutory burden.

Evidence established that Asfaha, a native and citizen of Ethiopia, joined the Tigra People Liberation Front (TPLF) in 1977 and worked exclusively as a recruiter. Composed of people who were ethnically Tigra, TPLF opposed the Mengitsu regime, the government in power at that time. Asfaha testified that he was soon arrested by Mengitsu authorities and incarcerated with other political prisoners. He was held in a room so small the prisoners had to sleep in shifts and was questioned, beaten, and threatened every few days. After forty days, Asfaha was released. As a condition of release, he signed papers agreeing to report to the government daily for a year and a half.

Asfaha did not have further contact with the TPLF until 1989, when the TPLF became the Ethiopian People's Revolutionary Democratic Front (EPRDF). He then joined EPRDF and assisted with recruitment. In 1991, EPRDF took control of the government. Asfaha

began experiencing ideological differences with the group and voiced his complaints at meetings. After one such meeting in June 1991, someone shot at Asfaha on his way home. Asfaha believed that the EPRDF regional representative, Aregawi, was responsible for the shooting. Asfaha came to the United States as a visitor in September 1991 for a month and a half. He testified that he did not apply for asylum at that time because he was tricked into believing that Aregawi was dead and that it was therefore safe to return to Ethiopia. On his way home, Asfaha stopped in London for several weeks and attended a political meeting where he gave a five minute speech.

Once back in Ethiopia, Asfaha returned to his job at the United Nations and did not experience any difficulties until May 1992. At that time, he testified, he was arrested at the direction of Aregawi, who was in fact alive, and detained for a day and a half. After his release, Asfaha testified that someone shot at his car. He also stated that unknown individuals were calling his home while he was staying in a hotel. He then left again for the United States. The record includes a letter from Asfaha's sister dated August 5, 1992, which states that since Asfaha's departure to the United States, officials asked about him and recruited young children to report his movements.

Asfaha maintains that the Board erred in finding that his claim regarding fear of persecution by EPRDF lacks credibility and incorrectly found that past persecution he suffered did not merit a grant of asylum on humanitarian grounds. He further contends that the Board erred in finding that assuming he suffered past persecution, he could not show a well-founded fear of future persecution in his home country because of the overthrow of the Mengitsu regime.

We conclude that substantial evidence supports the Board's finding that Asfaha's claim that he fears persecution by ERPDF lacks credibility. As noted by the Board, Asfaha made no reference in his written asylum claim to his alleged detention by ERPDF in May 1992. Nor did he mention the fact that Aregawi was actually alive upon Asfaha's return to Ethiopia. Rather, in an affidavit discussing the basis for his asylum claim, Asfaha stated that unnamed members of ERPDF came to his house and intimidated him, causing him to fear arrest.

4

These omissions and discrepancies implicate the core of Asfaha's asylum claim concerning fear of persecution by the current government of Ethiopia and support the Board's finding that Asfaha attempted at the hearing to improve his story. Moreover, contrary to Asfaha's contentions, substantial evidence supports the Board's finding that Asfaha's testimony was not detailed and persuasive. As the Board pointed out, Asfaha failed to provide any details of what he said at the June 1991 meeting or at the London conference. Additionally, the fact that Asfaha remained unmolested in Ethiopia until May 1992 after his return from the United States casts doubt on his claim that he was lured back home by the false report of Aregawi's death. And finally, Asfaha's claim that the Board ignored the asylum officer's finding that Asfaha was credible is misplaced. The Board is not bound by the asylum officer's decision and has the authority to make its own credibility findings and to assess the legal sufficiency of the evidence. See Huaman-Cornelio, 979 F.2d at 998.

Our review also discloses substantial evidence supporting the Board's finding that even assuming Asfaha did indeed suffer past persecution, it was not severe enough to warrant a grant of asylum on humanitarian grounds. We agree that while unfortunate, Asfaha's detention and mistreatment by the Mengitsu regime in 1977 does not merit a humanitarian grant of asylum based on past persecution alone. As the Board observed, Asfaha was not tortured such that he reported needing medical care and the conditions of confinement, while unpleasant, were not extreme. In addition, we find that Asfaha could not show a well-founded fear of future persecution because of changes in country conditions in Ethiopia, notably the overthrow of the Mengitsu regime. We note that Asfaha has already returned to Ethiopia once on his own volition since the change of government.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Asfaha has not established entitlement to asylum, he cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately pre-

5

sented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6