UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JATTU FOFANNAH AUGUSTA,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-2164

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-661-404)

Submitted: April 30, 1998

Decided: May 29, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John William O'Leary, JOHN O'LEARY & ASSOCIATES, Wash-
ington, D.C., for Petitioner. Frank W. Hunger, Assistant Attorney
General, Linda S. Wendtland, Senior Litigation Counsel, Anthony W.
Norwood, Office of Immigration Litigation, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jattu Fofannah Augusta petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to her native country"because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

We must uphold the Board's determination that Augusta is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Augusta] was

2

such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Augusta, who entered the United States as a nonimmigrant visitor in May 1992, disagrees with the Board's finding that she failed to demonstrate a well-founded fear of persecution because of her social group and political opinion. After a careful review of the administrative record, we find that substantial evidence supports the Board's finding that Augusta failed to meet her statutory burden.

Evidence established that Augusta, a native and citizen of Sierra Leone, was one of many mistresses of Bambay Kamara and the mother of his son. Kamara was the Inspector General of police in the All People's Congress (APC) government of Sierra Leone and a member of Parliament. Augusta was president of a young women's organization in the APC and traveled throughout the country with Kamara. Other members of Augusta's family were also politically active with the APC. Augusta's father was "Secretary Organizer" in Pujo, and her brother was the president of the APC in Pujo from 1976 to 1992. An uncle was also politically involved and was the Minister for the Eastern Province under the APC.

In April 1992, the APC government was overthrown by a military group which seized control of the government. Augusta was in Freetown on the day of the coup and went into hiding. After learning of Kamara's arrest and that she was on a list of persons sought by militants, Augusta made arrangements to be smuggled out of the country, passing through London on her way to the United States. Augusta's son, who was in London with his aunt and grandmother at the time of the coup, remains in London with them. Augusta testified that she later learned of the deaths of her father, brother, uncle, and another of Kamara's mistresses. Kamara's wife was reportedly beaten and imprisoned at the time of the coup, and Kamara himself was murdered and dismembered in December 1992.

Augusta maintains that she is in danger in her home country due to her status as a mistress of Kamara and the mother of his child and because of her political opinion. We find, however, that substantial

3

evidence in the record supports the Board's finding that Augusta did not establish eligibility for asylum.

As the Board noted, there have been three changes of government since Augusta fled Sierra Leone in 1992, including a coup in May 1997. While Sierra Leone remains a place of violence and unrest, general conditions of turmoil do not qualify Augusta for asylum.* See Matter of Mogharrabi, 19 I. & N. Dec. 439, 447 (BIA 1987). Considering the changes in government since Augusta's departure six years ago, it is unlikely she would be a focus of attention of the new government because of her prior relationship with Kamara. Finally, while Augusta contends she fears persecution because of her political opinion, there are almost no details in the record concerning her actual role and duties in the APC. Although Augusta's family members were active in the APC and some have been killed, the government she claims was responsible for those killings is no longer in power.

Because Augusta has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

*In her brief, Augusta points out that Sierra Leone was designated by the Attorney General for Temporary Protected Status in November 1997 because of armed conflict following the most recent coup. While Augusta may be eligible to remain in the United States during the period of designation, the fact of designation does not establish Augusta's eligibility for asylum.

4