**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

IMBETH BELAY; HAMSALU BELAY,
Petitioners,

v.

No. 98-1377

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-633-730, A70-633-954)

Submitted: September 15, 1998

Decided: October 19, 1998

Before WIDENER, WILKINS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Diane McHugh-Martinez, Washington, D.C. for Petitioners. Frank W.
Hunger, Assistant Attorney General, David M. McConnell, Assistant
Director, James A. Hunolt, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Imbeth Belay and Hamsalu Belay petition for review of a final order of the Board of Immigration Appeals (Board) denying their application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country"because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1997). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1997).

2

We must uphold the Board's determination that the Belays are not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [the Belays] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

The Belays, sisters who entered the United States under false passports on September 4, 1992, disagree with the Board's finding that they failed to establish past persecution or a well-founded fear of future persecution in their home country based on their imputed political opinion. Our review reveals, however, that substantial evidence supports the Board's finding that they did not satisfy their statutory burden.

Evidence established that the Belays, both natives and citizens of Ethiopia, began working as informants for the Mengistu government in 1988 and were elected members of the Ethiopian Youth Association. They testified that they had to participate in security and political operations against the Ethiopian People's Revolutionary Democratic Front (EPRDF). The EPRDF overthrew the Mengistu regime in 1991 and later comprised the Transitional Government of Ethiopia (TGE).

Imbeth Belay testified that she and her sister were told by operatives of the Mengistu government that they were to inform on the youth and turn in the names of students who were against the Mengistu government. Imbeth Belay further testified that when she and her sister refused to inform on their peers they were taken into custody and imprisoned for three days. While in prison they were beaten and told that they would be killed if they did not cooperate.

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

Out of fear the two agreed to work for the Mengistu government. However, both sisters were again arrested for failing to report activities. They were then detained for a week and beaten repeatedly. They again agreed to work for the government. After their release, Imbeth Belay testified that she provided only information that she considered would not be harmful and that nothing happened to the people about whom she provided information. Imbeth Belay then testified that they graduated from high school and remained with their family.

In 1990, the Belays moved from the Addis Ababa to the Arsi region of Ethiopia, where they stayed with relatives because they no longer wanted to spy and were suspected in their neighborhood of being informers. They were given authorization by the government to leave but were told to continue to act as informers. The Belays remained in Arsi without difficulty after the 1991 overthrow of the Mengistu regime. Imbeth Belay testified that they did not return to Addis Ababa after the change in government because the TGE was looking for them. Ultimately they returned to Addis Ababa for fifteen days prior to their departure for the United States.

The Belays maintain that the Board erred in finding that they failed to demonstrate past persecution and a well-founded fear of future persecution on account of their political opinion or membership in a particular social group. They contend that they have established eligibility for relief because the current government would consider them supporters of the Mengistu regime with opposing political beliefs because of their activities as unwilling informers.

We conclude that the Belays failed to meet the objective requirements for refugee status because they failed to show past persecution. The Board concluded that the Belays were punished for resisting recruitment as informers for the former regime and not because the Mengistu government imputed adverse political opinions to them and sought to persecute them on account of those political opinions. See 8 U.S.C. § 1101(a)(42); see also Cruz-Diaz v. INS, 86 F.3d 330, 331-32 (4th Cir. 1996). We conclude that substantial evidence in the record supports this finding.

Our review also discloses substantial evidence supporting the Board's conclusion that the Belays could not show a well-founded

4

fear of future persecution. First, as pointed out by the Board, Petitioners were very young, unwilling informants for the former regime, and their involvement was minimal. Further, the TGE came into power in 1991, yet the Belays remained in Ethiopia for more than one year thereafter without harm. Also, the Belays failed to present any evidence that other persons who acted as willing informants for the Mengistu regime have been subject to persecution by the current government. There is thus no objective basis for their assertion that they would have reason to fear persecution by the current government because of their activities in 1988. Furthermore, according to the State Department country report in the record, the TGE has vastly improved the past human rights record. As the Board mentioned, the harsh excesses of the Mengistu regime have ended and the TGE has announced explicit guarantees to improve its human rights practices.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As the Belays have not established entitlement to asylum, they cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5