**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SENAIT GIRMA,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1983

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-419-452)

Submitted: December 15, 1998

Decided: January 7, 1999

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard Steven Fishbein, David Allen Garfield, Washington, D.C.,
for Petitioner. Frank W. Hunger, Assistant Attorney General, Richard
M. Evans, Assistant Director, Ellen Sue Shapiro, Office of Immigra-
tion Litigation, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Senait Girma petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. We affirm the Board's decision because there is substantial evidence in the record as a whole that Girma does not now have a well-founded fear of persecution on account of protected grounds if she is returned to Ethiopia.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc). The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R.§ 208.13(b)(1) (1998). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1998). Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no rea-

2

sonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id.

We must uphold the Board's determination that Girma is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C.A. § 1105a(a)(4) (West 1994).* The decision may be reversed only if the evidence presented by Girma was such that a reasonable fact finder would have to conclude that the requisite fear of persecution existed. See INS v. Elias-Zacarias , 502 U.S. 478, 481 (1992).

Girma is a citizen of Ethiopia, who entered the United States as a nonimmigrant visitor in October 1991. Her attorney prepared an application for political asylum which she signed. At the time Girma signed the application, she related events to her attorney that had not been included in the application. The attorney, who was ill at the time, determined that the omissions could be rectified later and suggested that he submit the application as it was in order to obtain Girma's employment authorization. The attorney submitted the application for political asylum with the Immigration and Naturalization Service (Service) and died a few weeks later.

Girma was interviewed for asylum by the Service's Asylum Office in February 1996. One month prior to the interview, Girma submitted to the Service an affidavit setting out the events of her final months in Ethiopia. This was the time period left out of her 1992 application. In March 1996, the Service issued an Order to Show Cause charging Girma with deportability under the Immigration and Nationality Act § 241(a)(1)(B) for overstaying her visa. She admitted the allegations

_____

*We note that 8 U.S.C.A. § 1105a(a)(4) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C.A. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

of fact contained in the Order to Show Cause and conceded deportability in May 1996. At that time, Girma requested political asylum, withholding of deportation, and alternatively voluntary departure before the Immigration Court. The Immigration Court denied her applications for political asylum, withholding of deportation, and voluntary departure because the Immigration Judge found Girma enhanced the facts of her case to facilitate a grant of asylum from the Immigration Court. Girma appealed to the Board of Immigration Appeals. The Board upheld the Immigration Court's orders denying political asylum, withholding of deportation and voluntary departure, finding that Girma's testimony was not credible and that conditions in Ethiopia have changed to such an extent that Girma no longer has a reasonable fear of future persecution if returned. Girma timely filed a Petition for Review with this Court.

Girma's asylum request was based on persecution under the Ethiopian Mengistu regime and later under the government that overthrew the Mengistu regime in 1991. While in Ethiopia, Girma participated in the Ethiopian Democratic Union (EDU), a political opposition group. She participated in demonstrations against the Mengistu regime, EDU meetings, and the distribution of political literature. She was imprisoned twice, beaten, interrogated, and tortured. Her father was imprisoned for seven years and was later killed, Girma believes, due to his EDU activities. Girma's sister died while imprisoned. In 1991, a new Transitional Government took control of Ethiopia, but the EDU was opposed to this government also. The new government was dominated by members of the Ethiopian People's Revolutionary Democratic Front (EPRDF). The affidavit Girma submitted prior to her asylum hearing and the Immigration Court testimony contain consistent statements that the Transitional Government threatened and warned Girma about her political activities.

Girma left Ethiopia and entered the United States in October 1991. Once in the United States, Girma became an active member of the Coalition of Ethiopian Democratic Forces (COEDF), a political group that opposes the EPRDF. Following 1995 elections, the Federal Democratic Republic of Ethiopia (FDRE) took over control of Ethiopia. The FDRE consists primarily of EPRDF factions. Girma testified that her active participation in COEDF makes her a target of the current Ethiopian government.

4

Girma disagrees with the Board's finding that her testimony regarding events after the Mengistu regime's fall was not credible. A review of the record establishes that there was a misunderstanding below concerning the date Girma submitted her affidavit to the Service which led the Immigration Court to believe Girma embellished her story after her asylum interview in order to obtain relief. The misunderstanding concerned Girma's experiences with the Transitional Government, which overthrew the Mengistu regime. However, even assuming the truth of Girma's testimony concerning her encounters with the post-Mengistu government, there is substantial evidence in the record as a whole that because of the 1995 change in Ethiopian government, Girma does not have a well-founded fear of persecution on account of protected grounds today.

The Service presented evidence that the changes in Ethiopia "are so fundamental and sweeping that most applicants claiming [persecution] during the Mengistu period would not now be in danger of abusive treatment from the new government upon returning." Bureau of Democracy, Human Rights, and Labor, U.S. Department of State: Ethiopia: Profile of Asylum Claims and Country Conditions 14 (1995). The record establishes that since Ethiopia's August 1995 change in leadership, the Ethiopian government has been open to opposition political groups that renounce violence but that Girma's political group, COEDF, has not done so. Although the current government has jailed certain COEDF members, once these persons renounced violence, they were released. The Service has shown by a preponderance of the evidence that since the time of Girma's persecution, conditions in Ethiopia have changed to such an extent that Girma no longer has a reasonable fear of future persecution if returned. Finally, Girma has not claimed, and the record does not show, that she warrants a discretionary grant of asylum arising solely from the severity of her past persecution. For these reasons, we affirm the Board's order.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5