**Rafael FIGEROA, a/k/a Rafael Najarro–Morales, Petitioner,**

v.

**U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 88–3875.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1989.

Decided Sept. 21, 1989.

Edward M. Leigh (Leslie Johnson, El Centro Asylum Project, on brief), for petitioner.

Allison R. Drucker (John R. Bolton, Asst. Atty. Gen., Civ. Div., Richard M. Evans, Asst. Director, Office of Immigration Litigation, Joseph F. Ciolino, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, on brief), for respondent.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

ERVIN, Chief Judge:

Rafael Figeroa–Leyva petitioned this court for a review of a decision by the Board of Immigration Appeals, ("BIA") which upheld an order requiring Figeroa's deportation. The BIA found that Figeroa did not, as he claimed, suffer ineffective assistance of counsel and that, even if such ineffective assistance did occur, Figeroa suffered no prejudice because he could not

demonstrate a *prima facie* showing of a "well-founded fear of persecution". We vacate the BIA's finding that Figeroa received effective assistance of counsel, but we uphold the finding that he suffered no prejudice as a result. For that reason we affirm the Board's decision upholding the deportation order.

## I.

Rafael Figeroa–Leyva is a twenty year old male citizen of El Salvador with a third grade education. He illegally entered the United States on November 3, 1986, but was apprehended the following day and charged with deportability for his illegal entry.

Figeroa's first attorney, Jose Tellez, represented him before an immigration judge on December 4, 1986. At that time Tellez and an attorney for the Immigration and Naturalization Service ("INS") entered into a stipulation whereby Figeroa: (1) conceded his deportability; (2) declined to designate a country of deportation, and stated that he understood that such a declination would result in the designation of El Salvador as such country; (3) stated that he wished to have an opportunity to apply for asylum, withholding of deportation and voluntary departure; (4) stated that he understood he had been granted until January 20, 1987, to apply for asylum and withholding of deportation; and (5) stated that he understood that his failure to submit timely application for asylum or withholding of deportation would result in the immigration judge deciding his case on the basis of the record, and his being considered solely for voluntary departure.

Although Figeroa explicitly told his attorney that he did not wish to return to El Salvador, and instructed him to file an asylum application on his behalf, Tellez failed

to do so. As best anyone can tell, Tellez did not file the application after being told by Figeroa's sister to have him accept voluntary departure instead. Tellez never discussed his actions with Figeroa, and it was not until Figeroa received his deportation order that he learned Tellez had not taken the requested action.

After the immigration judge issued his deportation order on March 2, 1987, Figeroa obtained new counsel, Leslie Johnson, and filed an administrative appeal with the BIA. On his appeal before the BIA, Figeroa argued that his right to competent counsel had been violated by Tellez's inadequate representation, and that he did not want to return to El Salvador because he feared persecution for political reasons. Specifically, Figeroa alleged that he was not present at the hearing before the immigration judge and that Sergio, an agent of Tellez, told him that the attorney would file an asylum application on his behalf. Neither Sergio nor Tellez, however, told Figeroa that the application was due on a specific date, gave him any papers or explained in detail the procedures for requesting asylum. Figeroa also stated that he lived in an area of heavy guerilla activity, and that the guerillas had burned at least twenty five houses and killed at least three men in the village. Figeroa further alleged that he was in danger of being forcibly "recruited" by both the guerillas and the army, but that he could not join either group because, "for political and moral reasons" he refuses "to participate in the killing in El Salvador." He claimed that if he returns to El Salvador and refuses to join either group, then either might kill his family. If he joins one of the groups, then the other might kill his family.[1]

The BIA dismissed Figeroa's administrative appeal in January, 1988. The Board observed that Figeroa had admitted that

---

**1.** We note that since filing this appeal Figeroa has petitioned the BIA to reopen his case. In the petition to reopen, which is still pending, Figeroa alleges facts regarding his persecution by the military and the guerillas which are far more specific than those alleged in the record before us. We do not mean for our holding today to indicate that the facts set forth in the petition to reopen are also insufficient to estab-

lish a *prima facie* case. Our decision is simply not based on those factual allegations. *See Brice v. United States Dept. of Justice,* 806 F.2d 415 (2d Cir.1986) (It is the responsibility of the immigration judge and the BIA to assess an alien's objective evidence supporting his fear of persecution, and the Court of Appeals will not do so in the first instance).

Tellez had represented him, and therefore the immigration judge could rely on Tellez's concession of deportability and his failure to file an asylum application. The BIA also rejected Figeroa's ineffective assistance of counsel claim because he:

produced no evidence to substantiate his contention ... There is no letter from the [petitioner]'s new counsel requesting Mr. Tellez to respond to the charge made against him, nor apparently has any complaint been filed against Mr. Tellez by the [petitioner]. In the absence of such evidence, we do not accept the [petitioner]'s unsubstantiated statements.

Furthermore, the Board held, Figeroa did not establish "any prejudice by his attorney's alleged failure to file his asylum application." This failure to establish prejudice in turn resulted from Figeroa's failure "to establish a *prima facie* showing that a reasonable person in his circumstances would have a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Such a showing was necessary, the BIA said, for Figeroa to prove that he had a valid asylum claim. Figeroa now petitions this court to overturn the Board's decision.

## II.

■ Whether the alleged ineffective assistance of counsel rises to the level of a due process violation presents a mixed question of law and fact, and is therefore subject to *de novo* review. *See United States v. McConney,* 728 F.2d 1195, 1202–03 (9th Cir.1984) (*en banc*). The appeals court should use "its own best judgment as to whether counsel was effective." *Mohsseni–Behbahani v. INS,* 796 F.2d 249, 250 (9th Cir.1986).

■ To prevail on a claim of ineffective assistance of counsel at a deportation proceeding, an alien must show not only ineffective representation, but also prejudice to him which occurred as a result of that ineffectiveness. *See, e.g., Ramirez–Dura-*

zo v. INS, 794 F.2d 491, 499 (9th Cir.1986); *Magallanes–Damian v. INS,* 783 F.2d 931 (9th Cir.1986); *Paul v. INS,* 521 F.2d 194, 198 (5th Cir.1975).

### A.

### Ineffective Assistance

■ The BIA found that Figeroa had not established ineffective assistance of counsel, primarily because they rejected his assertion that he was unaware of Tellez's failure to file his asylum application despite Figeroa's express request that he do so. The rejection of Figeroa's assertions resulted from the lack of evidence corroborating it, and the Board's finding that Figeroa himself lacked credibility. The BIA noted that the record was devoid of any efforts by Figeroa's new counsel to contact Tellez and request a response to Figeroa's "charges." The Board further observed that Figeroa had taken no "action" against Tellez for the attorney's alleged incompetence.

This lack of corroboration is not a sufficient reason for rejecting Figeroa's ineffective assistance claim. Just as there is no evidence that petitioner's new counsel attempted to contact Tellez for a "response" to the "charges", there is also no evidence that the attorney would have responded, or that Tellez's assertions regarding the asylum application would have been more credible than Figeroa's.[2]

We note that any credibility finding made by a trier of fact in deportation proceedings must be supported by substantial evidence. *Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir.1987); *Saballo–Cortez v. INS,* 761 F.2d 1259, 1262 (9th Cir.1985). "Although an immigration judge's credibility findings are granted substantial deference by reviewing courts, a trier of fact who rejects a witness's positive testimony because in his or her judgment it lacks credibility should 'offer a specific, cogent reason for [his] disbelief.'" *Turcios, supra,* at 1399, *quoting Damaize–Job v. INS,* 787

2. Some time after the Board's denial of Figeroa's administrative appeal, his current counsel contacted Tellez by telephone and certified mail and requested an affidavit explaining his failure to file Figeroa's asylum application. As of the date of this appeal, Tellez had not responded.

F.2d 1332, 1338 (9th Cir.1986). In the instant case, the BIA offered no reason whatsoever for disbelieving Figeroa. They apparently found he lacked credibility for the simple reason that he was an illegal alien who wished to remain in this country. An individual's status as an alien, legal or otherwise, however, does not entitle the Board to brand him a liar.

Furthermore, it is not as though Figeroa's story itself is inherently incredible. Indeed, in view of the facts, attorney negligence or incompetence appears to be the only plausible explanation for Figeroa's failure to timely file an asylum application. Under these circumstances, attorneys are not appointed to represent aliens as a matter of right. Figeroa had to actively seek the assistance of counsel, and he retained Tellez through a private agreement. It is doubtful that an individual such as Figeroa, who was anxious to remain in this country, would go to the trouble of retaining counsel or of formally requesting an opportunity to apply for asylum, or would voluntarily remain in detention because he believed his asylum application was being processed, and then simply fail to see—either willfully or through neglect—that the application was filed.

Furthermore, while petitioner took no "action" against Tellez, we fail to see how this indicates that Tellez's representation was effective. Figeroa is an adolescent[3] alien who speaks no English and who has only a third grade education. He is no doubt unaware of any action he might be able to take against Tellez, such as filing either a complaint with the state bar or a legal malpractice claim. Additionally, Figeroa's new counsel probably recognized that neither a disciplinary proceeding nor a civil action against Tellez would have provided petitioner with much assistance in terms of his deportation proceedings. Their energies were properly directed at stopping the deportation, rather than pursuing Tellez.

In view of these facts, we must vacate the BIA's finding that Figeroa did not suffer ineffective assistance of counsel. The evidence is clear that Tellez's conduct failed to meet even the minimum level of competence expected of an attorney under these circumstances. At the very least, whether in a trial, an administrative proceeding, or settlement, plea or business related negotiations, an attorney is ethically bound to act in the best interests of his client, and to follow his client's wishes. *See, e.g.,* ABA Code of Professional Responsibility, Canons 6, 7 and EC7-1. There seems little doubt but that Tellez's conduct failed to meet this standard.

## B.

### *Prejudice*

■ The BIA held that even if Tellez's representation was ineffective, it did not result in prejudice to Figeroa because, given the evidence of record, he could not establish a *prima facie* showing that he was entitled to a grant of asylum under 8 U.S.C. § 1158(a). That statute authorizes grants of asylum to aliens who qualify as "refugees" under 8 U.S.C. § 1101(a)(42)(A). A "refugee" is an alien who is unable or unwilling to return to his native land "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Upon a showing of a "well-founded fear of persecution" the Attorney General may, in his discretion, grant asylum pursuant to § 1158(a).

The "well-founded fear" standard applied to asylum claims includes both a subjective component, "requiring the fear to be genuine," and an objective component, which "'requires a showing by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution.'" *Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1579 (9th Cir.1986), *quoting Diaz–Escobar v. INS,* 782 F.2d 1488, 1492 (9th Cir.1986).

---

**3.** At the time of his initial hearing before the immigration law judge, Figeroa had just turned 17.

"It is only after objective evidence sufficient to suggest a risk of persecution has been introduced that the alien's subjective fears and desire to avoid the risk-laden situation in his or her native land become relevant." *Cardoza–Fonseca v. INS,* 767 F.2d 1448, 1453 (9th Cir.1985) *aff'd,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

The objective component will usually be satisfied by "documentary evidence of past persecution or a threat of future persecution." *Id.* The *Cardoza* Court recognized, however, that:

> refugees sometimes are in no position to gather documentary evidence establishing specific or individual persecution or a threat of such persecution. Accordingly, if documentary evidence is not available, the applicant's testimony will suffice if it is credible, persuasive, and refers to *'specific* facts that give rise to an inference that the applicant has been or has a good reason to fear that he or she will be singled out for persecution on one of the specified grounds' listed in section 208(a).

*Id., quoting Carvajal–Munoz v. INS,* 743 F.2d 562, 574 (7th Cir.1984). This court has held that:

> In its most generous form, the "well-founded fear" test requires the alien to establish that he has a subjective fear of returning and that this fear has enough of a basis in specific facts to be considered "well-founded" upon objective evaluation. The alien must offer "specific facts" detailing a "good reason" to fear persecution, or establishing an objectively reasonable "expectation of persecution."

*Cruz–Lopez v. INS,* 802 F.2d 1518, 1522 (4th Cir.1986), citing *Cardoza–Fonseca, supra; Del Valle v. INS,* 776 F.2d 1407 (9th Cir.1985); *Diaz–Escobar v. INS, supra.* These "specific facts," referred to by the appellate courts must "illuminate the hardships" faced by the individual alien "rather than the difficulties of their entire nation." *Kaveh–Haghigy v. INS,* 783 F.2d 1321, 1323 (9th Cir.1986). In short, "the evidence should be specific enough to indicate that the alien's predicament is appreciably different from the dangers faced by the alien's fellow citizens." *Vides–Vides v. INS,* 783 F.2d 1463, 1469 (9th Cir.1986).

Previous cases applying these standards make clear that Figeroa's allegations do not provide the "specific and objective facts" necessary to "support an inference of risk of future persecution." *See Cardoza–Fonseca, supra,* at 1453. In *Cruz–Lopez, supra,* this court upheld the Board's denial of asylum for a politically neutral El Salvadoran male who had received a threatening "recruitment" note from the guerillas. The court rejected the argument that the handwritten note constituted a " 'specific fact' giving [petitioner] a 'good reason' to fear persecution" because such notes "are distributed widely throughout El Salvador and they are frequently nothing more than idle threats." 802 F.2d at 1522. Because Cruz–Lopez offered no other evidence, "in the form of repeated threats or personal or familial persecution, tending to indicate that the threat he received was serious or that the guerillas will persist in their recruiting effort," he failed to establish an objectively well-founded fear. *Id.* The court observed that "Cruz–Lopez's position is no different from that of many young, urban males, 'invited' to join guerilla groups. Unfortunately, this country cannot serve as a haven for all of them." *Id.* at 1521.[4]

In his administrative appeal Figeroa did not allege a threat against him personally

---

4. A number of similar cases have upheld the denial of asylum. *See, e.g., Zepeda–Melendez v. INS,* 741 F.2d 285, 290 (9th Cir.1984) (deportation upheld for El Salvadoran recruited because of strategic location of his family's house); *Chavez v. INS,* 723 F.2d 1431, 1434 (9th Cir.1984) (deportation upheld for El Salvadoran threatened because he had been an armed security guard); *Chatila v. INS,* 770 F.2d 786, 790 (9th Cir.1985) (deportation upheld for Chilean because he did not testify that "specific threats had been made against his life or freedom" or that "he had *ever* been persecuted" because of his political activity); *Diaz–Escobar v. INS, supra,* at 1493 (deportation of Guatemalan who received threatening note on windshield of his car). *Compare Sanchez–Trujillo v. INS, supra* (deportation withheld for El Salvadoran student who had been imprisoned, tortured, forced to sign a blank confession, and placed on the government's list of suspicious persons); *Del Valle v. INS, supra* (deportation withheld for El Salvadoran who had been kidnapped and beaten, and who was wanted as an informant by a right

as specific even as the note received by Cruz–Lopez. He simply alleged that he feared persecution because he wished to remain politically neutral, and that both the guerillas and the army would try to recruit him by force. If he refused to join either group, either might kill his family. Figeroa also claimed that he lives in an area of heavy guerilla activity and that guerillas have burned at least twenty-five homes in his village, and have killed at least three men for collaborating with the government.

These allegations, however, are insufficient to demonstrate any specific threat directed against Figeroa in particular. Rather, they seem to reflect the dangers faced by virtually all young El Salvadoran males. Given this lack of specificity, and therefore the lack of objective evidence demonstrating that Figeroa is entitled to asylum, we must uphold the Board's finding that Figeroa suffered no prejudice as a result of his ineffective assistance of counsel.

For the reasons set forth herein the decision of the Board of Immigration Appeals is

VACATED IN PART; AFFIRMED IN PART.

wing group); *Bolanos–Hernandez v. INS,* 767 F.2d 1277, 1280 (9th Cir.1985) (deportation withheld for former army officer and right-wing party member recruited by guerillas to infiltrate the government, whose five friends and brother had been killed).