46 F.3d 1125
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Julio Cesar LEMUS, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-1762.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 30, 1994.
Decided Jan. 27, 1995.
 
 S. Rod Acchiardo, Baltimore, Maryland, for Petitioner. Frank W. Hunger, Assistant Attorney General, Philemina McNeill Jones, Jane Gomez, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.
 Before HALL and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant Julio Cesar Lemus petitions for review of a final order by the Board of Immigration Appeals ("the Board") denying Lemus's application for asylum and directing that Lemus be deported if he failed to voluntarily depart. Finding that substantial evidence supports the Board's decision, we affirm and deny the petition.
 
 
 2
 Lemus, a native and citizen of El Salvador, was charged with deportability in an Order to Show Cause issued by the Immigration and Naturalization Service ("INS") on March 9, 1993. The Order asserted that Lemus was deportable pursuant to 8 U.S.C.A. Sec. 1251(a)(1)(B) (West Supp.1994), for entering the United States without inspection. An Immigration Judge found Lemus deportable as charged and denied his request for asylum and withholding of deportation, but granted his request for voluntary departure. Lemus appealed the Immigration Judge's decision to the Board. The Board dismissed the appeal on May 12, 1994. Lemus timely petitioned for review to this Court pursuant to 8 U.S.C.A. Sec. 1105a(a) (West 1970 & Supp.1994), and moved to submit the case on the briefs. The INS does not object to the motion.
 
 
 3
 Lemus entered the United States without inspection in July 1986. When Lemus attempted to renew a fraudulent immigration document, the INS caught up with him and charged him with entering the United States without inspection. Lemus conceded his deportability at a hearing in June 1993, but requested asylum, withholding of deportation, and voluntary departure.
 
 
 4
 Lemus's written application for asylum revealed that he had been a member of the Civil Defense Force in El Salvador. Lemus alleged that in August 1985, members of the FMLN guerrilla organization attacked a municipal building in his town, and became privy to Civil Defense Force records which identified its members. Lemus left El Salvador in April 1986, because he believed the guerrillas would try to hurt him in retaliation for his participation in the Civil Defense Force. The asylum application also revealed that Lemus's cousin, who had served in the same Civil Defense Force unit as Lemus, was kidnapped and killed in April 1987 by FMLN guerrillas.
 
 
 5
 The Immigration Judge forwarded Lemus's asylum application to the State Department's Bureau of Human Rights and Humanitarian Affairs for an assessment of his claim. By letter dated July 9, 1993, the Bureau observed that Lemus's fear of returning to El Salvador was based on events that occurred during the civil conflict of 1979-92. The letter recounted that since 1992, the guerrilla forces and the government of El Salvador have implemented a cease-fire, which has resulted in a demobilization of guerrilla forces, the reduction by half of the Salvadoran military, amnesty for combatants, and a new civilian police force.
 
 
 6
 Further, politically-motivated violence has dropped to the lowest level since fighting began in 1979, and reports of human rights abuses for 1992-93 were "statistically insignificant." However, the letter noted that El Salvador has experienced a significant increase in crime, possibly due to the large number of unemployed ex-combatants. Finally, the letter emphasized that the crime wave is random rather than political, and noted that popular support for the cease-fire remains very positive.
 
 
 7
 Lemus testified in support of his application for asylum at a hearing in November 1993. Lemus recounted his volunteer service in the Civil Defense Force. He stated that his town had been rife with civil conflict, and that he was recruited for military duty. Lemus asserted that he had never held any particular political opinion or orientation while in El Salvador, but served in the military because it was his obligation as a citizen.
 
 
 8
 Lemus also testified that a group of guerrillas broke into the town hall in 1985 and stole volumes of paperwork, some of which identified people serving in the military and Civil Defense Force. As a result, Lemus left El Salvador in 1986 because he feared that the guerrillas would take action against him for his involvement in the Civil Defense Force. Moreover, a group of FMLN guerrillas allegedly kidnapped and killed Lemus's cousin, who also served in the same military unit with Lemus.
 
 
 9
 Lemus conceded that the guerrillas have not harmed any other member of his Civil Defense unit, and that many such members still live in his town. The guerrillas did not harm or threaten Lemus while he was in El Salvador, and his wife and children still reside in El Salvador.
 
 
 10
 The crux of Lemus's application for asylum centers around his fear that returning to El Salvador will expose him to harm on account of his past connection to the Salvadoran military, or in revenge for recently slain guerrilla leaders.
 
 
 11
 We review factual determinations regarding an alien's statutory eligibility for asylum for substantial evidence. INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992); M.A. v. INS, 899 F.2d 304, 311 (4th Cir.1990) (in banc). We accord the Board all possible deference, and will overturn the Board's decision "only if the evidence presented by the petitioner 'was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.' " Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir.1992) (quoting Elias-Zacarias, 112 S.Ct. at 817).*
 
 
 12
 To qualify for a discretionary grant of asylum, an alien must demonstrate that he has been persecuted, or has a well-founded fear of persecution, in his native country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C.A. Secs. 1101(a)(42)(A), 1158 (West Supp.1994); Huaman-Cornelio, 979 F.2d at 999. The well-founded fear standard contains both a subjective and objective component. INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31 (1987). The subjective element requires that the alien's fear be genuine. Figeroa v. INS, 886 F.2d 76, 79 (4th Cir.1989). The objective component requires a showing of " 'credible, direct, and specific evidence ... that would support a reasonable fear that the petitioner faces persecution.' " Id. (quoting Sanchez-Trujillo v. INS, 801 F.2d 1571, 1579 (9th Cir.1986)); Sivaainkaran v. INS, 972 F.2d 161, 163 (7th Cir.1992); Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988).
 
 
 13
 Lemus asserts that based on the evidence of record, a reasonable factfinder would have to conclude that he has a well-founded fear of persecution in El Salvador. Lemus contends that his testimony regarding his duties in the Civil Defense Force, the guerrillas' confiscation of military paperwork, his cousin's death, and the government's current alleged inability to control guerrilla-incited violence establish that he as a well-founded fear of persecution if returned to El Salvador.
 
 
 14
 Based upon a thorough review of the record, however, we find that, while unfortunate, Lemus's situation is no different than scores of Salvadoran citizens. Lemus failed to establish either past persecution or a well-founded fear of persecution within the meaning of the statute. The record does not compel a finding that Lemus is entitled to asylum on any of the grounds that he offers.
 
 
 15
 First, the facts surrounding the kidnapping and murder of Lemus's cousin do not support his request for asylum. Lemus acknowledged that the guerrillas were unaware of the cousin's military involvement until they saw his identification tag. The record contains no evidence that the cousin's abduction and murder were motivated by a desire to persecute his cousin on account of race, religion, nationality, membership in a particular social group, or political opinion. Rather, the incident apparently was the type of random violence that was common during the Salvadoran civil war and appears unrelated to Lemus's claim of asylum eligibility. See Elias-Zacarias, 112 S.Ct. at 816-17 (asylum cannot be established without a showing of a direct motive by the persecutor to harm his victim on account of one of the grounds listed in 8 U.S.C.A. Sec. 1101(A)(42)(A)).
 
 
 16
 Moreover, the record is devoid of evidence to suggest that the kidnapping was related to any motivation by the guerrillas to harm Lemus. Lemus speculated that the guerrillas killed his cousin because he refused to provide them with information about other members of the military. Thus, the fact that Lemus's relative became a casualty of civil unrest does not entitle Lemus to asylum. Ravindran v. INS, 976 F.2d 754, 759 (1st Cir.1992).
 
 
 17
 Second, Lemus failed to offer specific facts to support a good reason to fear persecution. Figeroa, 886 F.2d at 80. The guerrillas confiscated the Civil Defense Force's military papers in August 1985, but Lemus did not leave El Salvador until April 1986. Lemus testified that while he was still in El Salvador, he was never threatened or harmed in any way. And with the exception of his slain cousin, Lemus knew of no other former military members who have been harmed. Thus, the Immigration Judge and Board correctly found that Lemus failed to establish a well-founded fear of persecution if returned to El Salvador.
 
 
 18
 Furthermore, Lemus failed to show that his fear of persecution is based on one of the statutory grounds enumerated in 8 U.S.C.A. Sec. 1101(a)(42)(A). Elias-Zacarias, 112 S.Ct. at 817. Lemus asserts that he has a reasonable fear of persecution by the guerrillas based upon his service in the Civil Defense Force. However, military status alone is not a recognized basis upon which to grant asylum. See Arriaga-Barrientos v. INS, 937 F.2d 411, 414 (9th Cir.1991). Additionally, Lemus testified that he held no particular political opinion while in El Salvador. Mere compliance with mandatory conscription is not a political statement. Id. Moreover, Lemus's request for asylum is weakened by the fact that he did not apply for asylum or temporary protective status upon entering the United States. Lemus remained in the United States for eight years without seeking asylum and declined to apply for asylum when first apprehended by the INS in 1993.
 
 
 19
 Finally, Lemus's fear of generalized violence does not entitle him to asylum. We have held that the asylum statute "does not extend eligibility for asylum to anyone who fears the general danger that inevitably accompanies political ferment and factional strife." HuamanCornelio, 979 F.2d at 1000. Lemus has articulated nothing more than a fear of generalized violence affecting the population as a whole.
 
 
 20
 Accordingly, we find that substantial evidence supports the Board's affirmance of the order of the Immigration Judge denying Lemus's application for asylum. Lemus has failed to demonstrate that his predicament upon returning to El Salvador is "appreciably different from the dangers faced by [his] fellow citizens." Figeroa, 886 F.2d at 80. Therefore, although we grant Lemus's motion to submit the case on briefs, we affirm the decision of the Board of Immigration Appeals and deny the petition for review.
 
 PETITION FOR REVIEW DENIED
 
 
 *
 Our review is normally limited to findings and orders of the Board of Immigration Appeals. Huaman-Cornelio, 979 F.2d at 999. However, where the Board adopts the findings of the Immigration Judge, we may review the Immigration Judge's decision, applying the same standard of review. Panrit v. INS, 19 F.3d 544, 546 (10th Cir.1994)