**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VERONICA BOATENG KONTOH,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 96-2835

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-741-255)

Submitted: June 24, 1997

Decided: August 15, 1997

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

Randall L. Johnson, JOHNSON & ASSOCIATES, Arlington, Vir-
ginia, for Petitioner. Frank W. Hunger, Assistant Attorney General,
Brenda E. Ellison, Senior Litigation Counsel, Laura M. Friedman,
Office of Immigration Litigation, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Veronica Boateng Kontoh petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we deny the petition.

I

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R.§ 208.13(b)(1) (1997). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as

2

when conditions in an alien's native country have changed significantly. 8 C.F.R. § 208.13(b)(2) (1997).

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id.; see Matter of Chen, 20 I & N Dec. 16 (BIA 1989).

We must uphold the Board's determination that Kontoh is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). We accord the Board all possible deference. Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Kontoh] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

II

Kontoh, who used a friend's passport to come to the United States as a nonimmigrant visitor in November 1987, disagrees with the Board's finding that she failed to qualify for asylum because of past persecution she suffered on account of her political opinion. Our review reveals, however, that substantial evidence supports the Board's finding that Kontoh did not satisfy her statutory burden.

Evidence established that Kontoh, a native and citizen of Ghana, became the organizing secretary of the Popular Front Party (PFP) in 1984. The PFP was a political party in opposition to the government of Flight Lieutenant Jerry John Rawlings, who seized power in Ghana in 1981 by military coup. As organizing secretary, Kontoh organized an anti-government demonstration in October 1985 which was broken up by the army. Kontoh was arrested after the demonstration and was detained for two months. While detained, she was beaten several times and repeatedly interrogated. Kontoh was released from deten-

3

tion after she was forced to sign a statement promising not to participate in future political activities.

Despite this statement, Kontoh continued her political involvement for two more years without government interference. In late 1987, Kontoh was present at a small political meeting when the group received word that soldiers were approaching. Kontoh fled and hid at a friend's home for a week. The friend gave Kontoh her passport which Kontoh used to enter the United States.

III

Kontoh maintains that the Board erred in questioning her credibility, and incorrectly found that past persecution she suffered did not merit a grant of asylum on humanitarian grounds. She further contends that the Board erred in finding that, assuming she suffered past persecution, she could not show a well-founded fear of future persecution in her home country because of significant changes in the political climate.

While the Board did express doubt about Kontoh's credibility because of inconsistencies in the record, the Board found that even assuming Kontoh did indeed suffer past persecution, it was not severe enough to warrant a grant of asylum on humanitarian grounds. We agree that while unfortunate, Kontoh's detention and mistreatment by Ghanian authorities in 1985 does not merit a humanitarian grant of asylum based on past persecution alone. In addition, we find that Kontoh could not show a well-founded fear of future persecution because of changes in country conditions in Ghana. The State Department report in the record cites various changes in Ghana since Rawlings consented to permit popular elections in 1993, including a decline in human rights abuses, an offer of amnesty to Ghanians in voluntary exile outside the country, the active participation of opposition political parties, and the release of the last known political prisoner. The Board also noted that Kontoh's own witness could not confirm that she had reason to fear persecution in Ghana.

The standard for withholding of deportation is more stringent than that for granting asylum. INS v. Cardoza-Fonseca , 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant

4

must demonstrate a "clear probability of persecution." Id. at 430. As Kontoh has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation.

We accordingly deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION DENIED

5