**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LOURDES VIOLETA LAURENTE-PAREJA,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-2196

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-662-855)

Submitted: February 24, 1998

Decided: April 3, 1998

Before MURNAGHAN, NIEMEYER, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John William O'Leary, JOHN O'LEARY & ASSOCIATES, Wash-
ington, D.C., for Petitioner. Frank W. Hunger, Assistant Attorney
General, Civil Division, Stephen W. Funk, Senior Litigation Counsel,
James A. Hunolt, Office of Immigration Litigation, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lourdes Violeta Laurente-Pareja ("Laurente") petitions for review of an order of the Board of Immigration Appeals ("Board") dismissing her appeal of the immigration judge's decision denying her application for asylum and withholding of deportation and granting voluntary departure. Because substantial evidence supports the Board's decision, we affirm.

A refugee qualifies for asylum if she is unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (West Supp. 1997); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc). The "well-founded fear of persecution" standard contains both a subjective and an objective component. See INS v. Cardoza-Fonesca, 480 U.S. 421, 430-32 (1987). The subjective element requires a genuine fear on the part of the alien. See Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires credible, specific, and direct evidence supporting a reasonable fear that the alien faces persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

The standard for withholding of deportation is more stringent than that for granting asylum. See Cardoza-Fonesca , 480 U.S. at 431-32. To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430.

We will uphold the decision of the Board unless the evidence compels the conclusion that the petitioner has a well-founded fear of persecution for any of the enumerated bases in the statute. See INS v. Elias Zacarias, 502 U.S. 478, 481 (1992); 8 U.S.C.A. § 1253(b)(4)(B) (West 1970 & Supp. 1997). In this case, the evidence does not compel

2

the conclusion that Laurente will be subjected to persecution or other harm upon her return to Peru.

The evidence presented at the hearing before the immigration judge on Laurente's application for asylum established that in 1985 Laurente left her family's village because of terrorist activities conducted by the insurgent group, the Shining Path, to live with her great aunt in Lima, Peru. At that time, the Shining Path, also active in Lima, bombed an IBM building located near Laurente's aunt's home.

Laurente testified that her aunt owned and operated a produce business that included a delivery service. In 1990, the Shining Path paid one of the delivery truck drivers to carry weapons. Laurente's aunt reported the incident to the police and subsequently received threatening phone calls. In 1991, Laurente's aunt left Peru for the United States. While Laurente lived alone in her aunt's home, she received approximately fifteen threatening phone calls in which the caller stated that her aunt would be killed and that she had better "take care of herself." However, once Laurente changed the telephone number, the threatening telephone calls stopped.

In April 1992, Laurente's aunt returned to Peru but lived in a different house without incident. Laurente testified that her aunt lived in fear, however, because two of the persons she accused of acting for the Shining Path are no longer in jail. In June and October 1992, the Shining Path bombed the police station across the street from the house Laurente lived in and the home of the former Minister of Education, who lived next door.

At the hearing, Laurente also testified that when she lived in Peru, she worked as a nurse and that the Shining Path kidnaped nurses to care for their members. Laurente stated that she knew of one nurse taken by the Shining Path who was never heard from again and that she feared being kidnaped as well. Laurente further testified that various family members in different parts of the country were experiencing troubles with the Shining Path. There was no testimony regarding whether Laurente or her family held any political opinions or whether members of the Shining Path were aware of any opinions held by her or her family.

3

In light of the foregoing evidence, we conclude that substantial evidence supports the Board's finding that Laurente does not have a well founded fear of persecution for any of the enumerated bases in the statute: race, religion, nationality, membership in a particular social group, or political opinion. Laurente failed to establish any belief or immutable trait that is adverse to a potential persecutor in Peru. The evidence does not show that the Shining Path harmed or attempted to harm Laurente "on account of" her imputed political opinion. The evidence establishes that Laurente and her family were subjected to civil unrest in Peru but were not singled out due to family group membership.

Further, Laurente fails to establish that she faces persecution because of her profession. Laurente did not show that nurses constitute a "closely-affiliated" social group or that they generally are targeted as a group by the Shining Path. See Sanchez-Trujillo v. INS, 801 F.2d 1571, 1575-76 (9th Cir. 1986). Laurente also did not show that the Shining Path approached her or threatened her because of her position as a nurse. In fact, Laurente failed to establish that the Shining Path was aware of her profession.*

Because Laurente fails to establish entitlement to asylum, she cannot meet the higher standard for withholding of deportation. We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED
_____

*The Board noted that Laurente may be expected to change her occupation to avoid potential persecution. See Matter of Acosta, 19 I. & N. Dec. 211, 234 (BIA 1985) ("The internationally accepted concept of a refugee simply does not guarantee an individual a right to work in the job of his choice.").

4