**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROSA DEL CARMEN DIAZ-GARCIA, for
herself and on behalf of her minor
son, Jose Maria Garcia,
<u>Petitioner,</u>

v.                                                                        No. 97-2322

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
<u>Respondent.</u>

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-703-940, A73-710-042)

Submitted: August 25, 1998

Decided: September 21, 1998

Before ERVIN and WILKINS, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Vernon D. Gutjahr, GUTJAHR & MONTAGUT, Falls Church, Vir-
ginia, for Petitioner. Frank W. Hunger, Assistant Attorney General,
Richard M. Evans, Assistant Director, Carl H. McIntyre, Jr., Senior
Litigation Counsel, Office of Immigration Litigation, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Rosa del Carmen Diaz-Garcia and her minor son, Jose Maria Garcia, petition for review of a final order of the Board of Immigration Appeals (Board) denying Diaz-Garcia's application for asylum, withholding of deportation, and voluntary departure. [1] Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(b)(1) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

We must uphold the Board's determination that Diaz-Garcia is not

_____

[1] Diaz-Garcia applied for asylum and her son was included in the application pursuant to 8 U.S.C.A. § 1158(b)(3) (West Supp. 1998). The Board granted Jose Maria Garcia voluntary departure.

eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). [2] We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Diaz-Garcia] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Diaz-Garcia, who entered the United States as a visitor with her family in December 1992, disagrees with the Board's finding that she failed to establish a well-founded fear of persecution in her home country based on her political opinion. Our review reveals, however, that substantial evidence supports the Board's finding that Diaz-Garcia did not satisfy her statutory burden.

Evidence established that Diaz-Garcia, a native and citizen of El Salvador, worked for sixteen years as a secretary with the Department of Health in the Apopa area. Apopa is located thirteen kilometers from San Salvador and was close to an area which was a hiding place for the guerrillas. Both Diaz-Garcia and her husband, who was also an accountant employed with the government and is now retired, belonged to the ARENA political party for which they attended meetings, worked on campaigns and distributed literature. Diaz-Garcia's husband's sister was a commander in the guerrilla group FMLN during the civil war and has been active in the political wing of the FMLN since the end of the war.

Because of political differences, there was tension between Diaz-Garcia's family and her sister-in-law. One night in November 1991, guerrillas came to Diaz-Garcia's house and knocked on the door. The guerrillas then shot at the lock on the door while Diaz-Garcia and her family escaped by jumping a fence and hiding at a neighbor's house.

_____

[2] We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

Prior to the guerrillas' arrival, Diaz-Garcia's husband received a telephone threat stating that if they did not leave the government and join the guerrillas, they would suffer the consequences through their son. After the attack, they gave up their telephone and moved to San Salvador. Diaz-Garcia believes her sister-in-law was responsible for the guerrillas coming to her house in 1991.

Diaz-Garcia was accompanied by her husband, son and daughter when she came to the United States in 1992. Her husband soon suffered a heart attack, however, and had to return to El Salvador with their daughter because he could not afford health care in the United States. He now lives with another sister and still reportedly receives threatening calls at her residence. Diaz-Garcia did not specify the source or nature of these threats.

Citing the guerrilla attack on her home in 1991, which she believes was instigated by her sister-in-law, Diaz-Garcia maintains that the Board erred in finding, based on the reasoning of the immigration judge (IJ), that she failed to meet her statutory burden. We conclude, however, that substantial evidence supports the IJ's finding that Diaz-Garcia could not show a well-founded fear of persecution based on her political opinion because of changes in country conditions in El Salvador. According to the State Department country report in the record, the demobilization of the last guerrilla combat units in December 1992 brought to a successful conclusion the demilitarization phase of the 1992 United Nations peace accords. Moreover, as the IJ noted, Diaz-Garcia's husband has been back in El Salvador since June 1993 and has not been harmed by the guerrillas even though he engaged in the same political activities as his wife. We also agree with the IJ's conclusion that there is insufficient evidence in the record to support Diaz-Garcia's belief that her sister-in-law was responsible for the guerrilla attack on her house in November 1991. And while Diaz-Garcia claims she could not relocate to safety in El Salvador because the country is too small, the State Department report notes that because FMLN ex-combatants tend to be concentrated in the areas where they were most active during the war, the option of relocation is available to those who were threatened or harassed by former guerrillas.

Diaz-Garcia next contends that the Board should have granted her voluntary departure despite a misrepresentation in her asylum applica-

4

tion with respect to the time, place, and manner of her entry into the United States. Under § 309(c)(4)(E) of the IIRIRA, we lack jurisdiction to review the Board's discretionary decision to deny Diaz-Garcia voluntary departure. See Eyoum v. INS, 125 F.3d 889, 891 (5th Cir. 1997).

Finally, Diaz-Garcia insists she qualifies for withholding of deportation. We find that because Diaz-Garcia has not established entitlement to asylum, she cannot demonstrate the "clear probability of persecution" required for withholding of deportation. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987).

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5