**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARIO JOEL TAGRE,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1960

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-712-375)

Submitted: December 15, 1998

Decided: January 5, 1999

Before WIDENER, MURNAGHAN, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Ana T. Jacobs, ANA T. JACOBS & ASSOCIATES, Washington,
D.C., for Petitioner. Frank W. Hunger, Assistant Attorney General,
David V. Bernal, Assistant Director, Francesco Isgro, Senior Litiga-
tion Counsel, Office of Immigration Litigation, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mario Tagre petitions for review of a final order of the Board of Immigration Appeals (Board) denying his application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see also M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (citation omitted); see also Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

We must uphold the Board's determination that Tagre is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).**1** We accord the Board all possible def-

_____

**1** We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No.

2

erence. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Tagre] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (citation omitted).

Tagre, a native of Guatemala, testified that he entered the United States without inspection on February 6, 1994. The man whom Tagre considers his father, Mario Campos,**2** worked in the military, in the national police unit, and as a bodyguard for the President of the Guatemalan Congress. In 1987, Campos was allegedly set up to transport a briefcase containing cocaine in connection with a conspiracy involving the President of the Congress. Campos discovered the briefcase's contents, refused to participate, confronted the President, and resigned his position. Following his resignation, Campos was savagely assaulted. Campos' injuries were so severe that he was in the hospital for the next year. Campos was in a coma for most of that year, and he suffered amnesia as a result. In 1990, a year after his discharge from the hospital, Campos immigrated to the United States.

Tagre testified that after his father's departure, unknown persons in civilian clothing would go to Tagre's house looking for his father. In 1992, well-dressed men in two cars abducted Tagre from his house and detained him for four days. During this time, Tagre was allegedly beaten and burned with cigarettes. After four days, Tagre told his captors that his father left the country, and they let Tagre go. Tagre showed scars on his arms and legs to the immigration judge. Tagre also told the immigration judge that he believed his attackers worked for the government because they were interested in locating his father. Tagre stated that he did not report his abduction because of his dis-

_____

104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

**2** Campos has never recognized Tagre as his son although Campos does acknowledge paternity of Tagre's younger brother. The Board found credible Tagre's testimony that the community recognized Tagre as Campos' son.

trust of the government. Tagre claimed that following his abduction people in cars would go to his aunt's home looking for him, and he would have to hide.

Tagre conceded his deportability, but asked for asylum on the grounds that he had been persecuted and had a well-founded fear of persecution on account of his membership in a particular social group (i.e., his family) and his political opinion. Tagre's petition for the granting of asylum and withholding of deportation was denied by the immigration judge. On review, the Board held that Tagre failed to establish that his persecution or fear of future persecution was based on a protected ground.

We find that the record supports the Board's decision. As a threshold matter, the alleged abuse suffered by Tagre was apparently inflicted by individuals seeking to conceal their drug activities and was not the result of the type of persecution encompassed by the statute. Moreover, the Board correctly found that substantial evidence supported the immigration judge's determination that Tagre did not have a well-founded fear of future persecution because his wife, children, mother, aunt, and other family members continue to live in Guatemala without any problems. Since Tagre failed to meet the standard for asylum, he necessarily failed to meet the more stringent standard for a withholding of deportation claim. See Huaman-Cornelio, 979 F.2d at 1000.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4