**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SUNDAY MICHAEL JOHN,
Petitioner,

v.

No. 98-2376

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-377-303)

Submitted: March 9, 1999

Decided: March 29, 1999

Before WIDENER, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard S. Bromberg, Washington, D.C., for Petitioner. Frank W.
Hunger, Assistant Attorney General, Civil Division, Mark C. Walters,
Assistant Director, Ann Varnon Crowley, Office of Immigration Liti-
gation, UNITED STATES DEPARTMENT OF JUSTICE, Washing-
ton, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner Sunday M. John seeks review of the order of the Board of Immigration Appeals ("Board") affirming the decision of the immigration judge ("IJ") and denying him political asylum and withholding of deportation. John contends that the Immigration Judge ("IJ") and the Board erred in finding his testimony not credible. We affirm the Board's decision.

To establish eligibility for a grant of asylum, an alien must demonstrate that he is a refugee within the meaning of the Immigration and Nationality Act ("Act"). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998). The alien bears the burden of proving that he is a refugee as defined by the Act. See 8 C.F.R. § 208.13(a) (1998).

John is a native and citizen of Nigeria who entered the United States on a visitor's visa in January 1991. He filed an application for asylum in the United States in February 1992. He claimed to have completed the 12th grade in 1990 and then attended Amadubelu University for five months. Accompanying the application was a five-page, typed statement in which he asserted that he feared persecution because he is a Christian. Although John did not state that he personally suffered persecution, he claimed that his religious beliefs placed him in a group routinely singled out for persecution.

John's asylum request was denied, and deportation proceedings commenced. At a hearing before the IJ, John's request to renew his asylum application was granted. In January 1996, John filed another application for asylum. In this application, John contended that he

2

was entitled to asylum because of his well-founded fear of persecution due to his political opinion, past political activities, and religious convictions. John claimed that he attended Cross River University from 1983 until 1986 and was a student union president. He further claimed that he and another student leader were arrested during a political protest in 1984. According to John, he was detained for two days, during which he was whipped, and denied access to a lawyer or his parents.

In the application, John claimed that despite warnings from police, he continued his political activities. On two separate occasions, police came to his home inquiring as to his whereabouts. John also stated that his wife, who remains in Nigeria, informed him that Nigerian police are still looking for him.

At a hearing before the IJ, John testified to the following. He completed high school in 1980 and went to work for the Ministry of Commerce and Industry from 1980 until 1983. In 1983, John entered Cross River University and was awarded a government-sponsored scholarship. He was elected president of the student union and led political demonstrations, although such demonstrations were prohibited by law. He led more than 2000 students in a peaceful demonstration against the military. For leading a student demonstration, he was arrested, beaten, and held for two days. John was arrested again shortly thereafter and detained for four hours for having participated in a meeting of students critical of the Nigerian government. Despite the arrests, the scholarship was not revoked.

John went into hiding for periods of time between 1986 until 1989 by moving from village to village. During this period, John married and worked on the family farm. He also went to Lagos to receive training to be a Sunday school teacher. When he returned to his community, he taught Sunday school. In 1990, John entered Amadu Bello University, a predominately Muslim school. John claimed he was well-known for his prior participation in anti-government demonstrations. He claimed he was granted admission to Amadu Bello on the condition that he not participate in any political or religious activities.

John was issued a Nigerian passport in 1990 that listed his occupation as civil servant. John claimed that he was unemployed at the time

3

and that the passport reflected information contained on a prior canceled passport. His passport was renewed by the Nigerian embassy in 1995. John reports that his wife informed him that he remains under investigation by Nigerian government officials.

The IJ concluded that John's testimony with respect to his political activities was not credible. The basis for the finding was that John's asylum applications made very little mention of his political activity. The IJ noted that John's testimony regarding being in hiding for a period was inconsistent with his testimony that he got married, taught Sunday school, and worked for his father during this period. Also impacting the credibility finding was the fact that John was able to keep his government scholarship despite his arrest in 1985. The IJ also noted that John apparently came out of hiding and was accepted into a predominately Muslim university. In addition, the IJ noted that if the Nigerian government sought to persecute John, it is unlikely that it would have renewed his passport in 1995. Furthermore, the IJ also noted several inconsistencies between John's asylum applications and testimony regarding dates of events. The IJ concluded that even if John was credible, he did not meet the criteria for asylum or withholding of deportation based upon political or religious beliefs. On appeal, the Board agreed with the "well-reasoned and thorough opinion of the Immigration Judge that the respondent's testimony was not credible" (A.R. at 2) and dismissed the case.

Our review of the Board's decision is "narrow, not broad." Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). An IJ's credibility determination is granted substantial deference and is reviewed under a substantial evidence standard. See Figeroa v. INS, 886 F.2d 76, 78 (4th Cir. 1989). An IJ who rejects a witness' positive testimony based on a lack of credibility should offer specific reasons for disbelief. See id. In John's case, the IJ offered several concrete examples of inconsistencies and missing details that led to his conclusion that John's testimony was not credible.

John contends that his testimony was internally consistent, that he provided substantial details regarding his political and religious activity, and that he submitted statements and country background reports demonstrating Nigeria's abysmal human rights record. John attributes

4

the slight mention of his political activities in his first asylum application as merely an omission of details. We disagree. John's first asylum application does not even state that he feared persecution because of his political activities. Rather, it is predicated upon fear of persecution on account of his religious beliefs. In contrast, his second application focused almost entirely on his political activity without much mention of his alleged fear of persecution based upon religious beliefs. John's testimony provided even greater detail regarding his political activity, without emphasis upon fear of persecution due to his religion. Furthermore, despite John's claim that his marriage, his Sunday school teaching, and his assistance of his father was reasonable conduct during his years in hiding, we find the IJ's conclusion that such activity made his testimony less credible was reasonable. In addition, as found by the IJ, John's claim of religious persecution on account of his advocacy of Christianity, and his need to be in hiding on account of his religion, are significantly undercut both by his voluntary attendance at a Muslim university and the institution's willingness to admit him as a student.

Accordingly, we conclude that substantial evidence supports the IJ's findings and the Board's dismissal of his appeal. We therefore affirm the Board's decision. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5