**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HANA HAILESELASIE,
Petitioner,

v.

No. 98-2178

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A74-291-169)

Submitted: February 26, 1999

Decided: March 18, 1999

Before ERVIN and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Onyebuchi N. Enechionyia, Arlington, Virginia, for Petitioner. Frank
W. Hunger, Assistant Attorney General, Richard M. Evans, Assistant
Director, Marion E. Guyton, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Hana Haileselasie petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (quoting Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir. 1987)); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1998). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1998).

2

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. See id.; Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Haileselasie is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Haileselasie] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Evidence established that Haileselasie, an Ethiopian native of Amhara ethnicity, entered the United States as a non-immigrant visitor in June 1995. Haileselasie belonged to the All Amhara's People Organization (AAPO), a group formed to speak out against the present government, the Ethiopian Peoples Revolutionary Democratic Front (EPRDF), and to advocate the rights of the Amharas. Haileselasie testified that she was arrested and detained without being charged of a crime on two occasions. Specifically, Haileselasie testified that on May 16, 1994, two armed soldiers came to her workplace and asked her for the key to a cabinet apparently containing AAPO documents. After Haileselasie advised the soldiers that she did know where the key was located, she was taken to a police station and detained overnight. The next day Haileselasie was again questioned regarding the key, and a female investigator slapped her once and threatened her until she eventually relinquished the key. Authorities

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

then allegedly went to Haileselasie's workplace and retrieved money, a list of AAPO members' names, and other documents from the cabinet. Thereafter, Haileselasie was imprisoned for fifteen days.

Subsequently, on July 15, 1994, Haileselasie was arrested for distributing pamphlets and collecting money to buy weapons. Haileselasie testified that when she refused to sign a document pledging that she would no longer participate in the AAPO she was imprisoned for two weeks in a small room with five other people. Haileselasie testified that she was eventually released when her father's friend gave authorities $10,000. After her release, Haileselasie's job was terminated and she ceased her involvement with the AAPO because she was afraid for her life. Haileselasie decided to leave Ethiopia, and she arrived in the United States in July 1995.

Haileselasie disagrees with the Board's finding that she lacked credibility and failed to establish that she suffered past persecution at the hands of the current government. Our review reveals, however, that substantial evidence supports the Board's finding that Haileselasie did not meet her statutory burden.

As noted by the Board, Haileselasie gave inconsistent and confusing details regarding the events relevant to her first arrest. In her affidavit filed with her asylum application, Haileselasie stated that in May 1994, two armed men of the EPRDF came to her office and requested the key to the cabinets where she kept important AAPO documents. In her direct testimony Haileselasie noted that the cabinets and the key were located at her place of employment. On cross-examination she stated that the key and the cabinets were located at the AAPO office. Further, as the Board pointed out, it seems unlikely that government authorities would take Haileselasie from her business office and ask her to produce a key when they could have gone directly to the AAPO office.

Even assuming Haileselasie's testimony was credible, we conclude that substantial evidence supports the Board's holding that the harm she suffered did not rise to the level of past persecution and that she failed to establish a well-founded fear of future persecution. The record reveals that after Haileselasie was released from prison in July 1994, she spent ten months in Ethiopia without contact from authori-

4

ties and was able to obtain a visitor visa and exit documents. Furthermore, her parents, both of Amhara ethnicity, have remained in the same home in Ethiopia without incident. Also, there is nothing in the record to suggest that Haileselasie is involved with the AAPO. Finally, the State Department Report notes that the Ethiopian government has taken steps to improve its human rights practices, and that as of 1994, full political rights were restored to those who were allegedly persecuted because of their political beliefs. Consequently, Haileselasie no longer has a well-founded fear of being persecuted based on her alleged political membership. See Berroteran-Melendez, 955 F.2d at 1256 (regarding "well-founded fear of persecution").

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Haileselasie has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5